[No. B084449. Second Dist., Div. Six. July 18, 1995.]

CITY OF OXNARD, Plaintiff and Appellant, v.
TWIN CITY FIRE INSURANCE COMPANY et al., Defendants and
Respondent.

**COUNSEL**

Lawler, Bonham & Walsh and K. Duane Lyders for Plaintiff and Appellant.

Crosby, Heafey, Roach & May, James C. Martin, Joseph P. Mascovich and Boyd C. Sleeth for Defendants and Respondents.

## OPINION

STONE (S. J.), P. J.—The City of Oxnard (Oxnard) appeals the judgment in favor of respondents Twin City Fire Insurance Company (Twin City) and First State Insurance Company (First State). Oxnard had sued respondents for breach of contract and bad faith in failing to contribute to its defense in another action. We affirm the judgment.

*Facts*

Since 1975, Oxnard has maintained a self-insured, third party liability plan along with other liability insurance policies.

Under the policy issued by Twin City in effect from August 1983 to September 1984, Oxnard had a $100,000 self-insured retention (SIR) for each occurrence. Under the policy issued by First State in effect from September 1984 to October 1985, Oxnard maintained a $200,000 SIR. Each policy expressly stated that only "excess" coverage was being provided, and such coverage was only available after Oxnard became legally obligated for a loss in excess of its retained limit or SIR.

In 1987, Oxnard was named a defendant in two lawsuits collectively called the Dunes Action. This action alleged personal injuries and property damage occurring over a 20-year period as a result of the development of a subdivision on the site of a former waste oil dump. Oxnard requested a defense and indemnity from all its insurers providing third party liability insurance from 1968 to 1985. Pursuant to their policy provisions that no insurance benefits were available until Oxnard had exhausted its applicable SIR, respondents declined to participate in Oxnard's defense or contribute to its defense costs in the Dunes Action.

In January 1993, with the consent of Oxnard's insurers who participated in its defense under a joint defense agreement, Oxnard settled the Dunes Action for a total payment of $306,000. Based on its percentage of participation specified in the joint defense agreement, Oxnard's share of the settlement was $99,857.

Oxnard sued respondents, alleging they breached their insurance contracts and acted in bad faith by refusing to contribute to Oxnard's defense and settlement in the Dunes Action. Oxnard theorized respondents were obligated to defend the Dunes Action because the action had the potential to

exceed Oxnard's SIR. Oxnard also argued the settlement required respondents' contribution since the total settled amount of $306,000 was over its SIR amount.

Respondents contended they provided only excess insurance, and as such, were not obligated to provide a defense until the underlying insurance had been exhausted through settlement or payment of a judgment. Here, they argued, the underlying insurance consisted of the SIR. Since Oxnard's portion of the Dunes Action settlement did not exceed its SIR amount under either policy, they owed nothing to Oxnard.

The trial judge rejected Oxnard's contention that respondents were required to contribute to its defense costs, on the ground that Oxnard was self-insured for both liability and defense costs. The judge also determined that, although the Dunes Action settled for $306,000, Oxnard actually paid less than $100,000 of this settlement, and hence had not exhausted its SIR under either excess policy.

### DISCUSSION

■ Oxnard contends the trial court erred in determining the nature and extent of respondents' defense obligations. We conclude the trial court correctly determined respondents were not liable for Oxnard's defense costs.

Oxnard specifically contends that respondents are responsible for a portion of its defense expenses on the grounds that (1) prior to settlement of the Dunes Action, the case had the potential of incurring liability in an amount over Oxnard's retained limits under respondents' policies; (2) the $306,000 settlement amount was entirely owed and paid by Oxnard; (3) the language in respondents' policies obligated them to participate in the defense of the Dunes Action; and (4) equitable principles support respondents' duty to contribute to Oxnard's defense costs.

Oxnard's first contention, that respondents' defense obligations must be determined on the basis of Oxnard's potential liability in the Dunes Action, is based on *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], which held that a liability insurer's duty to defend must be assessed at the outset of a suit by immediately determining whether the suit *potentially* seeks damages within coverage of the policy. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) Since respondents were third party liability insurers, Oxnard argues their defense obligations arose prior to settlement of the Dunes Action, in that the action potentially involved losses over the

amount of Oxnard's SIR's by alleging damages occurring over an indefinite period of time. Oxnard also relies on *Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645 [42 Cal.Rptr.2d 324, 897 P.2d 1] (hereafter *Montrose*), in which the Supreme Court has held that third party liability insurance claims involving continuous bodily or property damage are covered by all policies in effect during the period of loss which have a potential of coverage.

Neither *Gray* nor *Montrose* applies.

*Gray* concerns whether the type of occurrence is covered by a policy, not whether the amount of claimed damages falls within policy limits. There is no dispute here, as in *Gray*, that the Dunes Action presented a potential of coverage under respondents' policies.

*Montrose* involved a third party liability suit against an insurer which had issued four comprehensive general liability policies during the relevant period. Although this case likewise involves a third party liability claim, Oxnard erroneously presumes that, like the defendant insurer in *Montrose*, respondents were primary insurers. Oxnard, however, does not point to any provisions in respondents' policies from which it can be determined that respondents undertook the duties of primary carriers. Both policies contained numerous, unambiguous references to the nature of the instant coverage as excess insurance. Also, by the very nature of these policies wherein Oxnard agreed to insure itself for certain amounts, it expressly agreed to act as its own primary insurer under those retained limits. (*Nabisco, Inc.* v. *Transport Indemnity Co.* (1983) 143 Cal.App.3d 831, 836 [192 Cal.Rptr. 207].) By making a risk decision not to buy insurance coverage for the SIR amounts, Oxnard cannot seriously claim it had a reasonable expectation of primary coverage. (*Ibid.*; Civ. Code, § 1636.)

Different rules govern the obligations of excess and primary insurers. As excess insurers, respondents had no duty to participate in Oxnard's defense since the primary coverage under respondents' policies was never exhausted. Defense obligations of excess insurers arise only when primary insurance coverage is exhausted. (*Nabisco, Inc.* v. *Transport Indemnity Co., supra,* 143 Cal.App.3d at p. 836, citing *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 367 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75].)[1] As a self-insurer, Oxnard was solely liable for its defense costs attributable to

---

[1] Oxnard's assertion that *Signal* is inapposite, as involving allocation between excess insurance, is without merit. *Signal*'s ruling applies whether it is the insured or another excess insurer who seeks a defense contribution from an excess carrier.

the extent of its SIR, just as a primary insurer is responsible for defense expenses attributable to the extent of its coverage. (*Signal Companies, Inc.* v. *Harbor Ins. Co.*, *supra*, at p. 368; *Nabisco, Inc.* v. *Transport Indemnity Co.*, *supra*, at p. 836.)

Oxnard contends the trial court's conclusion, that its retained amount under respondents' policies was not exhausted, is erroneous. It makes a purely semantic distinction on the basis of the original source of the $306,000 settlement payment.

Pursuant to the joint defense agreement between Oxnard and its other insurers in the Dunes Action, Oxnard's actual share of the settlement was less than $100,000, which was under both SIR amounts. However, according to Oxnard, the other insurers were not "liable" for the settlement as parties to the action. Therefore, the entire settlement amount should be considered as owed solely by Oxnard.

Respondents' policies expressly stated that they were responsible only for "ultimate net loss" in excess of the retained amount. Oxnard's other insurers were responsible for approximately two-thirds of the settlement amount according to the joint defense agreement, and Oxnard's approximate share was one-third of the settlement. Oxnard's ultimate net loss was represented by the actual amount of its share. There is no way the amount of the entire settlement can be considered a "net loss."

■■■ Oxnard next contends certain provisions in respondents' policies imposed a duty upon them to defend the Dunes Action, regardless of whether respondents can be characterized as primary or excess insurers. Oxnard's basis for this contention is unclear. It does not argue the relevant provisions are ambiguous; it merely states the language therein can be interpreted in two different ways, and requests that we adopt its interpretation over the trial court's. We decline to do so. ■■■ Since there is no showing that the trial court adopted an unreasonable interpretation of unambiguous contract language, we are bound to uphold the court's interpretation. No miscarriage of justice can occur when the trial court has acted reasonably. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr.65, 468 P.2d 193].)

■■■ Assuming for argument sake we should review the policy de novo as Oxnard requests, we agree with the trial court's interpretation.

First, Oxnard argues First State's provisions state (1) First State has "the right and opportunity to associate with the Insured in the defense and control

of any claim . . . arising out of an occurrence reasonably likely to involve [First State]"; (2) "should the total amount for which such claim might be adjusted prior to such judgment exceed the retained limit, then . . . [First State] shall contribute to legal expenses in the ratio which its proportion of the liability for the judgment rendered, or settlement made, bears to the whole amount of said judgment or settlement"; and (3) "in no event shall the Insured's participation in such legal expenses exceed the retained limit . . . ."

The foregoing provisions did not require First State's participation in the Dunes Action defense. The first provision does not contain language mandating any defense obligation. Also, Oxnard does not mention the provisions that First State shall not incur legal expenses without its consent should any occurrence be likely to exceed the retained amount, and that no legal expenses were payable by First State for any claim adjusted prior to judgment for a total amount under the retained limit. These provisions, together with the second and third provisions cited by Oxnard, plainly support First State's position that Oxnard was responsible for defense costs for claims it settled within its SIR amount.

The same analysis applies to Twin City's policy. Oxnard states that, although Twin City expressly wrote in its policy that it was not required to provide a defense of any suit against the insured, its policy nevertheless imposed a duty to defend here based on provisions similar to the second and third provisions Oxnard cites above for First State. Again, this language does not exclude Oxnard's responsibility to pay its defense costs. Nor can we interpret these clauses to override the unambiguous language in Twin City's policy that the company was not required to provide a defense in any action against Oxnard. ■ Insurance policies must be interpreted as a whole, giving force and effect to every provision where possible. (*Titan Corp.* v. *Aetna Casualty & Surety Co.* (1994) 22 Cal.App.4th 457, 474 [27 Cal.Rptr.2d 476]; *Fraker* v. *Sentry Life Ins. Co.* (1993) 19 Cal.App.4th 276, 284 [23 Cal.Rptr.2d 372].)

■ Finally, Oxnard contends the trial court's interpretation of the subject policies causes the unfavorable result of discouraging insureds from negotiating favorable settlements, and instead encourages them to litigate suits to judgment in order to recoup all defense expenses. There is no equitable reason for shifting to the excess carrier defense costs which the primary insurer incurred to discharge the contractual obligations it freely assumed. (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 768 [15 Cal.Rptr.2d 815], citing *Signal Companies, Inc.* v. *Harbor Ins.*

*Co., supra,* 27 Cal.3d at p. 370; *Chubb/Pacific Indemnity Group* v. *Insurance Co. of North America* (1987) 188 Cal.App.3d 691, 698-699 [233 Cal.Rptr. 539].) Here, the trial court correctly determined that Oxnard was responsible for its own defense costs since the settlement did not exceed its SIR under both policies. (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* at p. 368; *Nabisco, Inc.* v. *Transport Indemnity Co., supra,* 143 Cal.App.3d at p. 836.) As a matter of policy, respondents cannot be held liable for defense costs they were not contractually obligated to pay.

The judgment is affirmed.

Costs on appeal are awarded to respondents.

Gilbert, J., and Yegan, J., concurred.

A petition for a rehearing was denied August 15, 1995, and appellant's petition for review by the Supreme Court was denied October 4, 1995.