[No. B101289. Second Dist., Div. One. June 27, 1996.]

HOME INSURANCE COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ATLANTIC RICHFIELD COMPANY et al., Real Parties in Interest.

---

## COUNSEL

Charlston, Revich & Williams, Richard D. Williams, Patricia I. Taue and Shervin Mirhashemi for Petitioners.

No appearance for Respondent.

Heller, Ehrman, White & McAuliffe, M. Laurence Popofsky, Stephen N. Goldberg, David B. Goodwin, K. Louise Francis, Nancy Sher Cohen, Robert B. Hubbell, Morris, Polich & Purdy, Walter J. Lipsman and Douglas J. Collodel for Real Parties in Interest.

---

## OPINION

**VOGEL (Miriam A.), J.**—In this action by an insured against its primary and excess liability insurers to determine coverage with regard to dozens of underlying environmental contamination claims, all but three of the insurers have settled with the insured. When a nonsettling excess insurer requested information about the settlements, the trial court agreed that the information was discoverable but refused to order disclosure until after the nonsettling excess carrier's coverage obligation is determined at trial. The nonsettling excess carrier asked us to intervene, contending that its coverage obligation would never be triggered if the insured's claims were satisfied without exhaustion of other insurance or if the insured's claims were paid in full by the settlements with the other carriers. We stayed the trial and issued an alternative writ, and now issue a peremptory writ.

### BACKGROUND

In 1992, Atlantic Richfield Company and ARCO Chemical Company (collectively ARCO) filed a second amended complaint against The Home Insurance Company, City Insurance Company (collectively Home) and 32

other insurance companies,[1] seeking declaratory relief and damages for breach of contract and breach of the implied covenant of good faith and fair dealing. Reduced to its essence, ARCO's claim is that its insurers breached their obligations vis-à-vis a group of underlying environmental claims asserted against ARCO by various governmental agencies and numerous private parties. Home (ARCO's excess insurer)[2] answered, discovery ensued, and a discovery referee (Hon. Campbell M. Lucas, retired) was appointed to handle the inevitable disputes.

With trial set to begin in April 1996, all of ARCO's insurers except Home and two affiliated reinsurers (General Reinsurance Corp. and North Star Reinsurance Corp.) settled with ARCO. When Home's request for the terms, conditions and amounts of those settlements was refused, Home filed a motion to compel disclosure by ARCO. ARCO opposed the motion, and the matter was heard by the referee who recommended to the trial court that "Home be allowed discovery with respect to the method and manner of allocation of settlements between ARCO and [the] settling insurer defendants. Under this grant of discovery, [Home] will be provided with a sworn written statement, separately as to each settlement agreement between ARCO and a settling insurer, setting forth the manner of allocation of settlement dollars to sites, the manner of allocation by years, the manner of allocation to insurance policies, and other allocation criteria, if any, in the settlements between ARCO and each of the settling insurers. In addition, ARCO must disclose under penalty of perjury whether or not it contends that specific policies have been exhausted as a result of each settlement with each settling insurer. ARCO is not required to disclose any information relating to the negotiation process conducted in the presence of [the settlement judge].

"The Discovery Referee recognizes that [Home] is entitled to discovery of the settlement dollar amounts as between ARCO and the settling insurers. The Discovery Referee notes that ARCO and settling insurer defendants have to be aware that somewhere down the line, the settlement dollar amounts are going to have to be divulged to [Home], for contribution reasons, if nothing more. However, the Discovery Referee believes that the settlement dollar amounts need not be disclosed by ARCO to [Home] at this time. The settlement dollar amounts are properly subject to disclosure only

[1]Over 100 carriers were named as defendants. For settlement purposes, they were divided into 34 groups. For simplicity's sake, we discuss them simply as 34 insurance companies.

[2]Home issued numerous excess and umbrella policies to ARCO over a period of many years. According to ARCO, each Home "umbrella" policy covers ARCO if the underlying primary policy pays its applicable limits of liability or does not provide coverage. According to Home, the policies are not as broad as ARCO paints them, and they provide coverage only if the primary coverage is exhausted. We need not resolve this dispute to reach the issue before us.

after it is established that [Home] has a coverage obligation with respect to one or more sites in the case."[3]

Over Home's objections, on March 18, 1996, the trial court adopted the referee's recommendation. Home then filed a petition for a writ of mandate, asking us to direct the trial court to order immediate disclosure of the settlement terms, conditions and amounts because, according to Home, it is possible that ARCO has been fully compensated by settlement for the claims involving some of the sites. If that is so, the satisfied claims and the untriggered policies could be removed from the lengthy list of disputed issues and the length and scope of this litigation could be limited.

At the time Home's petition was filed (April 15), trial of Home's coverage obligations for four specified sites was scheduled to begin on April 29. By coincidence, on the same day Home's petition was filed, the trial court granted ARCO's unrelated motion to modify the plan to try this case in phases tied to groups of sites, and adopted instead a trifurcated proceeding which, although it may make sense to the trial court and the parties who have lived with this case for years, is not altogether clear to us. According to the court's April 15 order, trial will proceed in these phases: "(1) the insurance phase[;] (2) sites phase: Sand Springs, Garber Field, Prewitt and McColl, without deciding the sequence, if and; [sic] (3) damages or allocation. This Court takes no position, by way of example only of how to phase in issues of 'all sums' or 'non-accumulation.' [¶] Pursuant to agreement, jury instructions and motions in limine will be filed and exchanges [sic] on April 29, 1996. [¶] The overall time estimate for trial is fifty (50) plus court days. . . ."[4]

On April 24, ARCO filed preliminary opposition to Home's petition, contending the trial court did not abuse its discretion in deferring the time at which disclosure of the settlement information would be required, particularly in light of the trial court's new "trifurcation order." On April 25, we stayed the trial and on April 29 we issued an alternative writ, and the matter has now been fully briefed and argued.

## DISCUSSION

■ Home's position is that a substantial portion of the trial may be eliminated if ARCO has been fully reimbursed by its settlement with the

---

[3]ARCO reads this order as requiring immediate disclosure of the items specified in the first paragraph and deferred disclosure of only the amount of each settlement. ARCO does not explain how an allocation can be made without amounts or what good that would accomplish. nor does it represent that any disclosure has been made.

[4]ARCO has subsequently withdrawn its claims against Home with regard to two sites, one of which is referenced in the quoted order, and the parties are in agreement that, under the April 15 order, the second phase would cover only three sites.

other carriers or if some of Home's policies remain untriggered because the underlying primary policies have not been exhausted. According to Home, the trial court's decision to defer disclosure of the settlement information until after Home has been "tagged" with a coverage obligation has it backwards—the information should be disclosed before any phase of the trial begins, the settlement dollars should be properly allocated, and a determination made as to which, if any, underlying claims have been fully satisfied without Home's participation and which, if any, of Home's policies are no longer at issue because the underlying primary policies have not been exhausted. According to ARCO, (1) the trial court has done no more than exercise the broad discretion it has to control the timing of discovery, (2) ARCO has a need to keep its settlement "of these large, multi-insurer environmental coverage cases" confidential where, as here, Home has no "genuine need to know" at this time, (3) premature disclosure "would distort the settlement dynamic and would work harm to ARCO in this case," and (4) the trial court's current phasing order makes the amounts of the settlements irrelevant unless and until Home is "tagged" with coverage. We agree with Home.

## A.

Leaving the timing of disclosure to one side, Home's right to discover the amounts of the settlements and to have those amounts allocated cannot be seriously disputed.

In *City of Oxnard* v. *Twin City Fire Ins. Co.* (1995) 37 Cal.App.4th 1072 [44 Cal.Rptr.2d 177], Division Six of our court held that excess carriers have no duty to defend or to provide coverage unless and until the insured's primary insurance coverage is exhausted. (*Id.* at pp. 1077-1078.) Significantly, the court summarily disposed of the insured's contention that this interpretation of the policies ought to be rejected because it "causes the unfavorable result of discouraging insureds from negotiating favorable settlements, and instead encourages them to litigate suits to judgment in order to recoup all defense expenses." As Division Six put it, "[t]here is no equitable reason for shifting to the excess carrier defense costs which the primary insurer incurred to discharge the contractual obligations it freely assumed." (*Id.* at p. 1079.)

In *Topa Ins. Co.* v. *Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331 [46 Cal.Rptr.2d 516], the Sixth District held that a good faith settlement between an excess insurer and its insured does not bar the contribution claim of a second excess insurer. (*Id.* at p. 1333.) More specifically, the court held that the settling insurance company was not a joint tortfeasor or

co-obligor within the meaning of Code of Civil Procedure sections 877 and 877.6 and that, regardless of its abstract good faith, its settlement did not relieve it of whatever obligation it had to pay claims for contribution. (39 Cal.App.4th at pp. 1336-1344.) The Sixth District also rejected the settling carrier's contention that the trial court had some sort of inherent judicial power to bar the nonsettling carrier's claims and dismiss its cross-complaint, summarily dismissing the suggestion that the public policy considerations favoring settlements justified an expansion of the trial court's powers. (*Id.* at pp. 1344-1346; see also *Aerojet-General Corp.* v. *Transport Indemnity Co.* (1996) 50 Cal.App.4th 354 [53 Cal.Rptr.2d 398] review granted September 25, 1996 (S054501).)

These cases demonstrate that the trial court was correct in its conclusion that Home, as ARCO's excess insurer, is entitled to discover the amounts of the settlements and to have those amounts allocated to the various claims and policies so that it can be determined whether Home's coverage obligations have been triggered.

## B.

These cases also demonstrate that the trial court abused its discretion in deferring disclosure and in accepting ARCO's efforts to elevate its right to the confidentiality of its settlements over Home's right to present a defense in this action.

### 1.

Whether the trial is phased by sites or otherwise, the threshold question is and must be coverage. ARCO concedes as much, but contends it is up to the trial court to determine the order in which the coverage issues will be tried (for example, whether the meaning of "occurrence" should be decided first or whether the determination of some other issue should precede it). According to ARCO, a finding that there was no "occurrence" within the meaning of the policy (or no coverage for some other reason) would then make any apportionment issue irrelevant. ARCO misses the point.

Implicit in ARCO's argument (and, for that matter, in Home's position) is the assumption that this is an all-or-nothing issue. We do not see it that way. There are 58 sites involved in the underlying actions, with multiple claims asserted against each site. The sites are located all across the United States. There are 34 carriers named as defendants and most of them issued multiple policies to ARCO or its 6 predecessors-in-interest over a 42-year period, from about 1944 to 1986. While we can see some merit to ARCO's argument that an allocation of all the settlement money among all of the

policies and sites would be a total waste of time if Home ultimately prevails on the coverage issues on other grounds, we see no reason why the case cannot be pared down—notwithstanding ARCO's assertion that Home is "one of the most significant, if not the most significant, of [ARCO's] liability insurers."

For example, if some of the settling carriers insured only a few sites or provided coverage for only a short period of time, we see no reason why those carriers' settlements cannot be allocated accordingly and a determination made as to whether those settlements have fully compensated ARCO as to the covered sites and the claims against them. Similarly, we see no reason why the settlements cannot be allocated to the appropriate primary policies and a decision made as to which of Home's excess policies are at issue. While this may not resolve all of ARCO's claims against Home, it seems probable that it would resolve a good number of them—since all the carriers except Home and two reinsurers have settled with ARCO. For this reason, we reject ARCO's parade of horribles in which it marches out the worst-case scenario of the allocation process.[5]

2.

ARCO would have us disregard *City of Oxnard* v. *Twin City Fire Ins. Co.*, *supra*, 37 Cal.App.4th 1072 and *Topa Ins. Co.* v. *Fireman's Fund Ins. Companies*, *supra*, 39 Cal.App.4th 1331, and hold that the public policy considerations favoring settlement override any right Home may have to disclosure of the settlement information until, in its insured's opinion, Home "needs to know." There is no legal or equitable justification for such a rule in the context of this case, and we reject ARCO's arguments as disingenuous.[6]

According to ARCO, Home's "real motivation" for seeking disclosure is to gain a "very substantial negotiating benefit" to enable Home to settle with

---

[5]We view ARCO's emphasis of its continuing liability for "future unknown claims" as a red herring. This is an ever present issue in all environmental contamination litigation and, assuming Home has a coverage obligation, an allocation taking this possibility into account will ultimately have to be made. (See *Topa Ins. Co.* v. *Fireman's Fund Ins. Companies, supra*, 39 Cal.App.4th at pp. 1334-1335.)

[6]In the trial court, one or two of the thirty-one settling insurers opposed Home's motion and argued in favor of confidentiality—but only one of them (Continental Insurance Company) has appeared here—and its primary request is that we make any disclosure order subject to a comprehensive protective order (which we will, of course, do). Thus, while we accept ARCO's representation that its settlement agreements obligate it to keep the terms of those settlements confidential, we find it significant that it is ARCO, and only ARCO, who is still fighting the battle. We also note that none of the cases cited by ARCO in support of its claim of confidentiality have anything to do with excess carriers or with the facts of this case.

ARCO in this case for an unreasonably low amount, notwithstanding that *ARCO* is unable to discover the amounts *Home* has paid to settle *other coverage cases* (in which Home was a party but ARCO was not). If we understand ARCO's argument, we should presume a wrongful motive on the part of Home and deny its request because ARCO is not entitled to the same unfair advantage. First, the fact that Home might gain an incidental additional benefit from information it is legally entitled to receive is not grounds for denying it access to that information (and ARCO offers no authority to suggest that it is). Second, this argument ignores the fact that the only issue is "when," not "if." Whatever abstract merit there may be to the arguments in favor of the confidentiality of settlements, *City of Oxnard* and *Topa Ins. Co.* teach that those considerations are secondary to enforcement of the parties' contractual rights to pay and be paid only on the terms and conditions to which they agreed. Clearly, the obligor (Home) has the right to discover whether the condition precedent to its performance (an uncompensated loss by ARCO) has occurred. Third, ARCO's inability to discover the details of Home's settlements in unrelated cases in which ARCO is not involved is, to put it mildly, irrelevant.

Home agreed to insure ARCO according to the terms of its policies, but it did not agree to provide ARCO with a windfall of double or multiple coverage. Before Home is required to defend itself against each and every claim placed in issue by ARCO, Home is entitled to discover which, if any, of those claims have been satisfied by ARCO's settlements with the other carriers and which of Home's policies are at issue. The trial court can make the determination whether and to what extent that can be done simply and efficiently only after Home has had an opportunity to review the settlement information and been given a chance to make its case for early allocation.

### 3.

Finally, we note that ARCO's approach would serve only to drag out this case over more time. We cannot determine from the record before us whether the trial court has made any decision about the intervals between the trial's phases. If Home is compelled to await disclosure until after a determination of coverage liability, Home would quite obviously need a reasonable period of time to evaluate the information it received. Since ARCO contemplates a jury trial of the first phase, we have no clue about what is supposed to happen to the jurors while Home analyzes settlements involving 58 sites and 31 carriers. Conversely, if some of the equitable issues of apportionment can be determined before a jury is sworn, the trial can then move efficiently from one phase to the next.

## DISPOSITION

Let a peremptory writ of mandate issue commanding the trial court (1) to vacate its order of March 18, 1996, deferring disclosure of the terms, conditions and amounts of the settlements between ARCO and the other insurance carriers, (2) to enter a new order compelling pretrial disclosure of the terms, conditions and amounts of the settlements by ARCO within the time period fixed by the trial court and subject to a comprehensive protective order fashioned by the trial court, (3) to provide Home with an opportunity, before the first phase of the trial begins, to move for a complete or partial allocation of the settlement amounts, and (4) to thereafter provide Home with an opportunity to seek reconsideration of the trial court's current trifurcation order based upon the trial court's rulings on the allocation issues. The parties are to pay their own costs of these writ proceedings.

Ortega, Acting P. J., and Masterson, J., concurred.