[No. G040876. Fourth Dist., Div. Three. Jan. 12, 2010.]

FORECAST HOMES, INC., et al., Plaintiffs and Appellants, v.
STEADFAST INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Ulich & Terry, Andrew K. Ulich, Timothy A. Gravitt and Lori M. Cullman for Plaintiffs and Appellants.

Horvitz & Levy, David M. Axelrad, Peter Abrahams; Sinnott, Dito, Moura & Puebla, Randolph P. Sinnott and Gail Orr for Defendant and Respondent.

**OPINION**

**O'LEARY, J.**—Housing developers, Forecast Homes, Inc., and K. Hovnanian Forecast Homes, Inc. (referred to collectively and in the singular as Forecast), appeals from the judgment entered in its declaratory relief action in favor of Steadfast Insurance Company (Steadfast). Forecast contractually required all its subcontractors to defend and hold it harmless against any liability arising out of the subcontractors' work. Subcontractors were required to add Forecast to their general liability insurance policies as an additional insured. Several

subcontractors obtained their required insurance coverage from Steadfast, who later refused to indemnify Forecast when a lawsuit was filed by several homeowners against Forecast for construction defects. Steadfast maintained the subcontractor did not pay the policy's self-insured retention (SIR), which was a precondition for coverage. It argued only the named insured, not Forecast, could satisfy the policies' SIR and trigger coverage. The trial court agreed and concluded the policies were unambiguous, not against public policy, and not illusory. We agree and affirm the judgment.

## I

Forecast develops and sells single-family homes. Forecast ordinarily hires subcontractors to build the homes, and it requires subcontractors to maintain general liability insurance policies naming Forecast as an additional insured. Forecast's contract with each subcontractor specified in great detail the required insurance policy language and coverage specifications.

However, Forecast's contract did not require any specific language regarding the insurance policies' SIR provisions. The sole issue on appeal relates to the interpretation of the SIR endorsements. Consequently, we must discuss these provisions in greater detail.

Although there were over a dozen subcontractors, there were essentially only four different kinds of Steadfast policies at issue in this case (referred to in the briefs and by the trial court as the 98 form, the Rev. form, the 01 form, and the B form). However, the parties agree there are really only two different versions, which we will refer to as Form-A (containing the 98 and Rev. form endorsements) and Form-B (containing the 01 and B form endorsements).

All the endorsements contain the following: On the top of the page in capital letters is the statement, "This endorsement changes the policy. Please read it carefully." (Capitalization omitted.) This warning is followed by a large box, titled "Schedule. [¶] SELF-INSURED RETENTION AMOUNTS." The amounts varied depending on the policy but, for example, in one policy the amount was listed as "$2,500 [p]er [o]ccurrence [¶] $[0] [p]er [c]laim [¶] AGGREGATE $[0]." Under the schedule box in italicized lettering was the notation, "throughout this policy the words 'you' and 'your' refer to the [n]amed [i]nsured shown in the declarations, and any other person or organization qualifying as a [n]amed [i]nsured under this policy. The words 'we,' 'us,' and 'our' refer to the company providing this insurance." (Italics omitted.)

After the schedule box, Form-A's endorsement provisions provided, inter alia:

"I. Self-Insured Retention and Defense Costs—Your Obligations.

"A. The self-insured retention amounts stated in the Schedule of this endorsement apply as follows:

"1. If the [p]er [o]ccurrence self-insured retention amount is shown in the Schedule of this endorsement, you shall be responsible for payment of all damages and defense costs for each occurrence or offense, until you have paid self-insured retention amounts and defense costs equal to the [p]er ▮ccurence amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. The [p]er [o]ccurrence amount is the most you will pay for self-insured retention amounts and defense costs arising out of any one occurrence or offense, regardless of the number of persons or organizations making claims or bringing suits because of the occurrence or offense. [¶] . . . [¶]

"4. Except for any 'defense costs' that we may elect to pay, you shall pay all such 'defense costs' as they are incurred until you have paid 'defense costs' and damages for 'bodily injury,' property damage, 'personal injury' . . . or any other such coverages which may be included in the policy, equal to the applicable 'self-insured retention' amount. If any final judgment or settlement and defense costs is less than the 'self-insured retention' amount stated above, we shall have no obligation to reimburse you or pay 'defense costs' under this policy."

The endorsement contained additional provisions forbidding settlement without written permission, requiring notification of an occurrence or offense that may result in a claim, seeking reporting of SIR-incurred amounts, and announcing Steadfast's right to deny payment if the rules are not followed.

The last section of the endorsement provided only two definitions: (1) "A. 'Self-insured retention' means: [¶] the amount or amounts which you or any insured must pay for all compensatory damages which you or any insured shall become legally obligated to pay because of 'bodily injury,' 'property damage' . . . or any other such coverage included in the policy, sustained by one or more persons or organizations . . ."; and (2) "B. 'Defense costs' means: [¶] expenses directly allocated to specific claims and shall include but not be limited to all [s]upplementary payments as defined under the policy(ies); all court costs, fees and expenses; costs for all attorneys, witnesses, experts . . . and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy(ies)."

The parties agree this endorsement permitted SIR damages and defense costs to be used separately or in tandem to satisfy the per occurrence amount set forth in the schedule. For example, if the per occurrence amount was $2,500, the payment of any combination of damages or defense costs that add up to $2,500 would trigger Steadfast's duty to defend both the named insured subcontractor and Forecast, the additional insured. In a nutshell, what the parties dispute on appeal is *who* is permitted to activate coverage by paying the specified SIR per occurrence amount.

Section I of Form-B, like Form-A, is titled, "Self-Insured Retention and Defense Costs—Your Obligations." We have highlighted in bold the additional language found in Form-B, which is not contained in Form-A. In all other respects, the provisions are identical.

"A. The self-insured retention amounts stated in the Schedule of this endorsement apply as follows: [¶] 1. If the [p]er [o]ccurrence self-insured retention amount is shown in the Schedule of this endorsement, **it is a condition precedent to our liability that *you* make actual** payment of all damages and 'defense costs' for each 'occurrence' or offense, until you have paid 'self-insured retention' amounts and 'defense costs' equal to the [p]er [o]ccurence amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. **Payments by others, including but not limited to additional insureds or insurers, do not serve to satisfy the self-insured retention. Satisfaction of the self-insured retention as a condition precedent to our liability applies regardless of insolvency or bankruptcy by you.** The [p]er [o]ccurrence amount is the most you will pay for 'self-insured retention' amounts and 'defense costs' arising out of any one 'occurrence' or offense, regardless of the number of persons or organizations making claims or bringing suits because of the 'occurrence' or offense."

In all the policies, Forecast became an insured under the subcontractor's policy through issuance of an additional insured endorsement (AIE) by either the insurance carrier or by an agent/broker acting on behalf of the insurance carrier. The AIE amended the policy to include Forecast as an insured party under the policy.

In 2001 through 2003, Forecast was served with five different lawsuits for construction defects by homeowners living throughout Southern California (the underlying actions). After being served with the complaints in the underlying actions, it tendered its defense to several insurance carriers, including Steadfast, that had insured many of the subcontractors. In the underlying actions, the only named defendant was Forecast, not the subcontractors.

Steadfast denied Forecast's tender on the grounds that only the named insured under each policy was able to satisfy the bargained-for per occurrence amounts set forth in the SIR endorsements, and none of the subcontractors (the named insureds) had satisfied the SIR to trigger Steadfast's obligation to defend. It did not dispute Forecast was an additional insured party under each policy, and Forecast had proof it incurred defense costs sufficient to satisfy the per occurrence amounts in the SIR endorsements.

Forecast filed an action against Steadfast for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing. It asserted the endorsements permitted an additional insured to satisfy the SIR through payment of defense costs in the underlying action. It also asserted Steadfast's position violated public policy and rendered the coverage illusory by precluding the additional insured from having a chance to invoke the insurance coverage it expected. The trial court bifurcated the declaratory relief action.

Prior to trial, the parties stipulated to the admissibility of the insurance policies and the SIR endorsements. The parties also stipulated to the fact Forecast tendered its defense, and Steadfast denied coverage. The court received into evidence the testimony of Douglas Kaufman regarding industry practices as parol evidence. The court ruled it would only consider his testimony if it found ambiguity in the SIR endorsements. After considering briefs and argument, the court took the matter under submission.

The court ruled that in both the A and B forms, only the named insured subcontractors, not Forecast, had the right to satisfy the SIR per occurrence amounts and Steadfast's defense obligation had not been triggered. It concluded the SIR endorsements did not violate public policy and were not illusory.

## II

### A.  Standard of Review

"The interpretation of an insurance policy is a question of law subject to our independent review. [Citation.] To the extent the facts below were undisputed and capable of only one reasonable inference, we will independently review them as well to determine their legal effect. [Citation.]" (*Vons Companies, Inc. v. United States Fire Ins. Co.* (2000) 78 Cal.App.4th 52, 57–58 [92 Cal.Rptr.2d 597] (*Vons*).)

### B.  Self-insured Retention or SIR

■ "Liability insurance policies often contain a 'deductible' or a 'self-insured retention' (SIR) requiring the insured to bear a portion of a loss

otherwise covered by the policy." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2009) ¶ 7:378, p. 7A-145 (rev. # 1, 2009).) A "deductible" is a portion of an insured loss for which the insured is responsible. (*Id.*, ¶ 7:379, p. 7A-145.) It generally is "a specific sum that the insured must pay before the insurer owes its duty to indemnify the insured for a covered loss." (*Ibid.*) A deductible relates only to the "damages for which the insured is indemnified, *not to defense costs*. The insurer is fully responsible for defense costs regardless of the amount of the deductible so long as there is a potential for coverage under the policy." (*Ibid.*)

"The term 'retention' (or 'retained limit') refers to a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied *before* there is any coverage under the policy. It is often referred to as a 'self-insured retention' or 'SIR.' " (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 7:384, p. 7A-150 (rev. # 1, 2009).) Unlike a deductible, which generally relates only to damages, an SIR also applies to defense costs and settlement of any claim.

■ "It is well recognized that self-insurance retentions are the equivalent to primary liability insurance, and that policies which are subject to self-insured retentions are 'excess policies' which have no duty to indemnify until the self-insured retention is exhausted. [Citations.]" (*Pacific Employers Ins. Co. v. Domino's Pizza, Inc.* (1998) 144 F.3d 1270, 1276–1277, applying Cal. law.) The distinction between excess and primary insurers is significant because "[d]ifferent rules govern the obligations of excess and primary insurers. . . . Defense obligations of excess insurers arise only when primary insurance coverage is exhausted. [Citation.]" (*City of Oxnard v. Twin City Fire Ins. Co.* (1995) 37 Cal.App.4th 1072, 1077 [44 Cal.Rptr.2d 177].)

However, as noted by one respected legal treatise, "The analogy between 'primary' and 'excess' insurance should not be carried too far. An SIR is *not* the same as primary insurance for all purposes." (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 7:387, p. 7A-152 (rev. # 1, 2009).) For example in *Montgomery Ward & Co. v. Imperial Casualty & Indemnity Co.* (2000) 81 Cal.App.4th 356, 370 [97 Cal.Rptr.2d 44], the court rejected " 'stacking' " of SIR's in other triggered policies, as this practice would furnish the insured far less coverage than it had purchased. The court rejected the argument an SIR was the same as primary insurance and was not subject to the "horizontal exhaustion rule," i.e., the rule stating all primary policies in effect must be exhausted before any excess policy is triggered. (*Id.* at p. 365.)

"The insured may purchase other insurance to cover the SIR *unless the policy clearly requires* the insured itself, not other insurers, to pay this amount. [(Citing *Vons, supra*, 78 Cal.App.4th at pp. 63–64—fact that policy

referred to 'other valid and collectible insurance' indicated other insurance could be used to exhaust SIR.)]" (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 7:385.5, p. 7A-151 (rev. # 1, 2009).) As noted by the court in *Vons*, some policies may specifically preclude other insurance and "require the insured to be at risk for the retention amount." (*Id.*, ¶ 7:385.6, p. 7A-151.)

Similarly, a codefendant's payment may satisfy the SIR. "Where the insured and another defendant are jointly and severally [liable] for the injury or damage, an SIR under the insured's liability policy may be satisfied by payments made by the other defendant or its liability insurer . . . unless the policy clearly provides otherwise." (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 7:387.3, p. 7A-152 (rev. # 1, 2009), italics omitted; see *Vons, supra*, 78 Cal.App.4th at pp. 63–64.)

■ However, the *Vons* court, and other courts interpreting SIR's are all careful to note an SIR, like any insurance provision, must be enforced according to its plain terms. Who may satisfy the SIR depends on each policy's express provisions. Accordingly, we turn to the basic rules of contract interpretation to determine the unique issue raised in this appeal, i.e., can an additional insured satisfy this SIR?

### C. General Rules Regarding Insurance Contract Interpretation

■ "While insurance contracts have special features, they are still contracts subject to the ordinary rules of contract interpretation. The fundamental goal of contract interpretation is to give effect to the parties' mutual intentions, which, if possible, should be inferred solely from the written terms of the policy. If that language is clear and explicit, it governs. [Citation.] Policies must be interpreted as a whole, giving force and effect to every provision where possible. [Citation.]" (*Vons, supra*, 78 Cal.App.4th at p. 58.)

■ "Policy provisions are ambiguous only if they are capable of two or more reasonable constructions. We will not adopt a strained or absurd interpretation to create an ambiguity where none exists. The policy terms must be construed in the context of the whole policy and the circumstances of the case and cannot be deemed ambiguous in the abstract. [Citation.] If an ambiguity cannot be eliminated by the language and context of the policy, then we invoke the principle that ambiguities are construed against the party who caused the uncertainty—the insurer—in order to protect the insured's reasonable expectations of coverage. [Citation.]" (*Vons, supra*, 78 Cal.App.4th at p. 58, fn. omitted.)

Forecast asserts SIR endorsements, like deductibility clauses, are subject to a heightened level of scrutiny and are to be interpreted narrowly and

strictly construed against the insurer. For this purported rule, it relies on *Beaumont-Gribin-Von Dyl Management Co. v. California Union Ins. Co.* (1976) 63 Cal.App.3d 617 [134 Cal.Rptr. 25] (*Beaumont*), disapproved on other grounds in *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 865 [21 Cal.Rptr.2d 691, 855 P.2d 1263], which contains a statement, the thrust of which is that a deductibility clause must be treated as any other limitation in the policy. The context of that statement is, however, that ambiguities, wherever they appear in an insurance policy, will be construed against the insurer. The *Beaumont* case does not announce a new rule regarding how courts should approach interpreting an unambiguous exclusionary clause.

■ On a final note: "A contract extends only to those things which it appears the parties intended to contract. Our function is to determine what, in terms and substance, is contained in the contract, not to insert what has been omitted. We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there. Finally, words used in a certain sense in one part of a contract are deemed to have been used in the same sense elsewhere. [Citation.]" (*Vons, supra*, 78 Cal.App.4th at pp. 58–59.)

### D. *Form-B Plainly Provides Only a Named Insured May Satisfy the SIR*

The Form-B's SIR endorsement starts off with the boilerplate sentence " 'you' and 'your' refer to the [n]amed [i]nsured . . . ." Thereafter, the first full paragraph of the endorsement (provision I.A.1.) titled "Your Obligation" contains a statement plainly and clearly limiting *who* can satisfy the SIR (by making payment of damages and/or defense costs). It states in relevant part, "it is a condition precedent to our liability that *you* [the named insured] make actual payment . . . until you [the named insured] *have paid*" the SIR amount. (Italics added.) It clarifies, "Payments by others, including but not limited to additional insureds or insurers, do not serve to satisfy the self-insured retention. Satisfaction of the self-insured retention as a condition precedent to our liability applies regardless of insolvency or bankruptcy by you." Later section I, subdivision 4, reiterates the previous sections, stating, "you shall pay all such 'defense costs' *as they are incurred* until you have paid" costs equal to the SIR. (Italics added.) Because the word "you" was previously defined to be the named insured, it logically follows the named insured must pay defense costs to satisfy the SIR. This section of the policy regarding *who* can make the payment to satisfy the SIR is clear and unambiguous.

Forecast argues these statements are contradicted and rendered ambiguous by a paragraph in the endorsement's last section (section IV), titled simply "Definitions." One definition describes what are "defense costs." It defines

defense costs as "expenses" related to litigation claims, and it provides a lengthy list of possible litigation-related expenses. The second definition describes what qualifies as SIR. It defines SIR as "the amount or amounts" that "you or any insured must pay for all compensatory damages which you or any insured shall become legally obligated to pay because of . . . 'property damage' . . . or any other such coverage included in the policy . . . ."

■ Forecast focuses on the phrase "you or any insured" and argues "any insured" necessarily includes an additional insured. It then leaps to the conclusion the definition of SIR creates ambiguity as to who can pay the SIR. Steadfast replies the premise of this conclusion is fatally flawed as it is based on a misreading of section IV. We agree. The definitions must be read in context of the entire policy and the intended purpose of the policy. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545] (*Bank of the West*).) Section I plainly relates to describing *who* is obligated to pay the SIR. Both definitions in section IV are devoted to describing *what* amounts and expenses qualify for the named insured's SIR payment. When read in context of the surrounding provisions of the endorsement, it would be a strained interpretation to view section IV as simply a duplicative provision or, worse, conflicting surplusage, to section I. A layperson would reasonably look to section I and section IV for different pieces of information regarding the SIR obligation. "We will not adopt a strained or absurd interpretation to create an ambiguity where none exists. The policy terms must be construed in the context of the whole policy and the circumstances of the case and cannot be deemed ambiguous in the abstract. [Citation.]" (*Vons, supra*, 78 Cal.App.4th at p. 58.)

■ As correctly noted by Steadfast, a broad definition of the amounts qualifying as SIR payments benefits the insured (the subcontractor) and supports the intended function of the policy. When a court is "faced with an argument for coverage based on assertedly ambiguous policy language [it] must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy. [Citation.] This is because 'language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.' [Citations.]" (*Bank of the West, supra*, 2 Cal.4th at p. 1265, italics omitted.)

Section IV defines SIR as any "amounts" the named insured or any other insured "must pay" or "shall become legally obligated to pay" because of any

damages covered by the policy.[1] This broadly worded definition was designed to include debts incurred by the additional insured, and not just those obligations belonging to the named insured. This expansion was necessary for the parties' reasonable expectations that lawsuits naming only the additional insured, Forecast, would still be covered by the subcontractor's policy. The endorsement purposefully defined the "amounts" to include debts and obligations arising from Forecast's lawsuit, in which the subcontractors were not named. If Forecast requested the subcontractor to make payments (pursuant to its hold harmless agreement with the developer) this would satisfy the subcontractor's SIR obligation and trigger further insurance coverage for an additional insured, like Forecast. We conclude the purpose of the policy is satisfied by this interpretation of the unambiguous language of the SIR endorsement.

We reject Forecast's theory the insurer was required to specifically list who was precluded from paying the SIR out of their pocket. It asserts Steadfast could have easily inserted language to the effect that *only* the named insured may pay, or specifically precluded payment by other insurance or by any additional insured (such as Forecast). Forecast maintains it reasonably expected it would not be treated any differently than the named insured subcontractor, and either insured could trigger insurance coverage.

We conclude Forecast's theory would turn the law of contract interpretation on its head. The parties' mutual intentions must first be determined, if possible, from the written terms of the policy. If it is "clear and explicit, it governs." (*Vons, supra,* 78 Cal.App.4th at p. 58.) The endorsement clearly defines "you" and "your" to mean the named insured. Section I, concerning "Your Obligation" explicitly and plainly refers to the named insured's obligation. The paragraph below this title, warning, "it is a condition precedent to our liability that *you* make actual payment of all damages and 'defense costs' for each 'occurrence' . . . until you have paid [SIR] amounts" (italics added) clearly describes *who* pays. It is only the named insured. Steadfast could not have been clearer, without being repetitive. It was not necessary to envision, and then create, a list of who possibly *could not* satisfy the condition precedent.

The cases Forecast relies upon do not support its theory. *Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.* (2001) 94 Cal.App.4th 842, 852 [115 Cal.Rptr.2d 26] (*Fireman's Fund*), is but one of many cases illustrating the consistently broad interpretation given by California courts to coverage

---

[1] As correctly noted by Steadfast, section I states the SIR will be satisfied when the expenses and damage amounts "have" been paid by the named insured, whereas section IV uses the future tense, stating amounts that must be paid or amounts that shall become legally obligated to pay qualify as SIR amounts.

phrases such as "arising out of" or "arising from" and "resulting from." In *Fireman's Fund*, an employee of a construction company was injured in the course of work he was doing for an oil company. The injury occurred when a step owned and maintained by the oil company collapsed. The employee sued the oil company, and it sought a defense under a contractor's liability policy to which the oil company had been added as an additional insured. The endorsement provided that the oil company's coverage was limited to " ' "liability arising out of" ' " the contractor's work for the oil company. (*Id.* at pp. 845–846.) The court concluded insurance coverage was triggered because the policy language broadly "connote[d] only a minimal causal connection or incidental relationship" between the factual situation with the event creating liability. (*Id.* at p. 849.)

The court rejected the insurer's public policy argument, explaining, "With respect to the words used to express the mutual intent of the parties, several courts have observed an insurance company's failure to use available language to exclude certain types of liability gives rise to the inference that the parties intended not to so limit coverage. [Citations.] For example, in *Merchants Ins. Co. of New Hampshire, Inc. v. USF&G* (1st Cir. 1998) 143 F.3d 5, 10, the court stated: 'After all, if [the insurer] had really intended to limit coverage under the additional insured Endorsement to those situations in which an added insured . . . was to be held vicariously liable only for the negligence of a principal insured such as Great Eastern, USF&G was free to draft a policy with qualifying language that expressly implemented that intention. [Citation.]' " (*Fireman's Fund, supra*, 94 Cal.App.4th at p. 852.)

The case is not at all like ours. Clearly an insurer cannot use broad coverage language such as "liability arising out of" if it desires to limit coverage of an additional insured to a particular standard or causation or theory of liability. It does not follow that an insurer who uses specific language to designate the named insured as obligated to make the SIR payment to trigger coverage would also list the other foreseeable payees from whom it will *not* accept payment. As noted in *Fireman's Fund*, public policy generally favors freedom of contract. Forecast contractually required specific language be used in the subcontractors' policies. It was certainly free to require modification of the SIR endorsement to permit payment by any additional insurance or insured.

Likewise, the *Vons* case does not support Forecast's argument. That case concerned whether the named insured (Vons) could use other insurance proceeds to satisfy Vons's SIR obligation. (*Vons, supra*, 78 Cal.App.4th at p. 59.) The insurer, United States Fire Insurance Co. (USF) argued that to be self-insured under an SIR means, as a matter of law, the insured must pay the SIR from its own pocket. (*Ibid.*) The court concluded this argument failed for

two reasons. First, the SIR "expressly stated that it was 'subject to' all of the policy's terms and conditions, which remained unchanged. [Citations.]" (*Id.* at p. 62.) The court concluded, "There is nothing ambiguous about this language, which meant that the SIR was controlled by the various terms and conditions of the Vons policy." (*Ibid.*) Among the conditions in the USF policy was a provision stating the policy was excess to any other valid insurance that covered the same occurrence. (*Id.* at pp. 62–63.) The court noted USF could not explain why the SIR provided excess coverage which precluded payment by other insurance, but it was also subject to the terms stating the policy was excess if any other insurance was available. The court held the only reasonable construction of the SIR, "in light of the other insurance provisions to which it was subject," permitted payment of the SIR through other insurance. (*Id.* at p. 63.) Second, it concluded any conflict between USF's interpretation and the other policy provisions rendered the SIR ambiguous. Turning to the rules for interpreting ambiguous contract provisions, the court reasoned, "Nowhere does the SIR expressly state that Vons itself, not other insurers, must pay the SIR amount. Because the SIR was subject to the other insurance provisions, which also made the Vons policy excess if there were another policy covering the accident, Vons as a reasonable insured could read the policy as permitting the use of other insurance proceeds to cover the SIR amount. [Citation.]" (*Id.* at p. 64.)

The *Vons* case is distinguishable from ours because the SIR endorsement in Steadfast's policy does not state the terms were "subject to" all of the policy's terms and conditions. To the contrary, in highlighted language the insured is clearly warned the terms of the endorsement "shall control" if there is a conflict with other policy language. In other words, in the event a policy provision was found to conflict with an SIR term, the endorsement provisions would prevail. Thus, under the terms of the Steadfast policy, the endorsement trumps all other provisions.

Moreover, the *Vons* court's resolution of its ambiguous SIR, by noting there was no express language forbidding payment by other insurance, is not applicable to this case. The SIR in our case is not ambiguous. It plainly provides the named insured must pay the SIR. Steadfast was not required to further clarify *only* the named insured could pay or predict and name all entities and parties who are not the named insured and therefore not permitted to pay the SIR. Forecast's lengthy discussion of its reasonable expectations as a developer would be relevant only if the SIR endorsement were ambiguous. It simply is not.

E. *Form-A Plainly Provides Only a Named Insured May Satisfy the SIR*

Form-A is identical to Form-B discussed above, except it is an earlier version not containing the clarifying sentence, "Payments by others, including

but not limited to additional insureds or insurers, do not serve to satisfy the self-insured retention. Satisfaction of the self-insured retention as a condition precedent to our liability applies regardless of insolvency or bankruptcy by you." Forecast argues that Steadfast modified Form-A by adding this sentence because it recognized Form-A allowed an additional insured to satisfy the SIR retention. We disagree.

The endorsement in Form-A still contains section I.A. describing whose obligation it is to pay the SIR. It plainly states "you," the named insured, must "be responsible for payment" of defense costs and/or damages. Section IV in the old and new version is the same. The definition of SIR states what amounts owed by either the named insured or other insured (additional insured) qualify. Although the modification in section I.A. further clarifies the question of who pays, it does not prove the prior version permitted satisfaction of the SIR by an additional insured. In light of the amount of growing litigation regarding this point, it was likely a remedial measure. It is against public policy to view modification of the policy as creating a negative inference. (See *Tzung v. State Farm Fire and Cas. Co.* (9th Cir. 1989) 873 F.2d 1338, 1341; *Suarez v. Life Ins. Co. of North America* (1988) 206 Cal.App.3d 1396, 1406 [254 Cal.Rptr. 377] ["the fact that [policy] language could be more explicit does not render it ambiguous"].)

## F. *Public Policy Considerations*

Forecast argues interpreting the insurance policy to allow only the named insured to satisfy the SIR obligation violates public policy and is not enforceable. Citing cases regarding the public-policy-created implied covenant of good faith and fair dealing, Forecast summarizes the "precise nature and extent of the duty [to act fairly and in good faith] depends on the contractual purposes, that is, the nature of the bargain struck and the legitimate expectations arising from the contract." It concludes courts must invalidate or restrict policy provisions that frustrate the purpose behind the coverage.

Applying these legal principles, Forecast asserts, "There is no question that Steadfast's coverage position has frustrated the reasonable expectations of Forecast, has frustrated the purposes of Forecast being named as an additional insured under the policies, and is therefore contrary to the public policy principles inherent in insurance policies issued in this state." Forecast points to the fact it insisted on being named as an additional insured because its liability would likely be derivative and arising from a problem with the subcontractor's work. Forecast stated it took commercially reasonable steps to assure itself it would be provided a defense against claims, and ultimately be indemnified. It explains Steadfast's coverage position means Forecast will

be left without a defense "if the named insured decides it does not want Steadfast to defend it, refuses to pay defense fees to trigger the defense obligation, is not named in a lawsuit, or even if it wants to pay defense costs but is financially incapable of doing so . . . ." It adds Steadfast's coverage position interferes with the developer-subcontractor relationship and undermines their bargained-for arrangement.

This public policy argument invites the question, if Steadfast could require its subcontractors to carry certain insurance, why didn't it require a policy permitting the additional insured to satisfy the SIR obligation? As Forecast told us at the beginning of its brief, "given our litigious society, Forecast is also in the 'business' of getting sued over the homes that it builds. It is not too much of an exaggeration to say that as soon as the last nail in a project is hammered and the keys are handed over to the homeowners, the ink on the first lawsuit over the construction of the homes is starting to dry." Forecast asserts that given this "unfortunate reality" it will "*insist* that each subcontractor not only obtain one or more commercial general liability insurance policies . . . but also that Forecast be named as an additional insured party under each of these policies" to assure Forecast it will be covered in the event of a lawsuit. (Italics added.)

We have reviewed Forecast's contract with the subcontractors, and it contains several paragraphs providing detailed instructions on the scope, language and extent of required insurance coverage. For example, Forecast specified the insurance "shall provide coverage with limits not less than combined single limit of $1,000,000 for bodily injury and property damage." In addition, it specifies "[T]he required insurance shall be subject to the approval of the [c]ontractor . . . ."

██ Given Forecast's bargaining position with the subcontractors, it is difficult to fathom what public policy would be advanced by requiring the court to rewrite an unambiguous policy provision and essentially insert an additional phrase permitting the additional insured to satisfy the SIR obligation. As noted by Steadfast, our Supreme Court consistently admonishes against rewriting insurance policy language to deny parties their general freedom to contract. Where policy provisions are unambiguous, and not contrary to any statute, they generally will not be deemed unenforceable as contrary to public policy. (See, e.g., *Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070 [135 Cal.Rptr.2d 361, 70 P.3d 351] (*Rosen*) [court refused to rewrite coverage provision based on notions of sound public policy where coverage extended only to instances of actual collapse, rather than imminent collapse, of a building].)

The record shows the subcontractors had sound reasons for wanting to control whether and when coverage under the policy would be triggered.

Forecast acknowledged the primary purpose of an SIR provision is to allow the named insured to contain its insurance costs. As with deductibles, the more risk the named insured claims for itself, the lower the premiums will be. In addition, Steadfast asserted the endorsement protects a subcontractor anticipating several claims, as it may choose to preserve the coverage offered in later policies, and satisfy the SIR in earlier policies to obtain the maximum benefit.

It cannot be overlooked that the subcontractor, not Forecast, formed the insurance contract with Steadfast. "[B]y agreeing to this contract of insurance, the insurer made promises, and the insured paid premiums, against the risk of loss. To rewrite the provision [limiting who can satisfy the SIR obligation] would compel the insurer to give more than it promised and would allow the insured to get more than it paid for, thereby denying their freedom to contract as they please. [Citation.]" (*Rosen, supra*, 30 Cal.4th at p. 1080.)

Indeed, Forecast could have required its subcontractors to obtain insurance policies listing Forecast as a named insured but this likely would have resulted in higher insurance premiums, which would have increased the cost of the subcontracts and the overall bid price, jeopardizing Forecast's chances to gain the development contract. Presumably, the parties took all this into account in deciding what course to follow. Under these circumstances, public policy does not allow a reviewing court to interfere and change the bargain the parties reached merely because certain recognizable risks come to pass.

On a final note, we question why Forecast apparently never asked the subcontractors to activate their policies by funding the SIR. Its argument on appeal is entirely premised on "if" the subcontractors refused to pay. Forecast does not assert this is actually what happened. The record is silent as to whether Forecast also filed a lawsuit against the subcontractors pursuant to their agreed-upon hold harmless clause. No public policy supports a lawsuit that could have been rendered moot if Forecast had in the first instance simply requested the subcontractors to activate their policies by paying the required SIR.

### G.   *The Policy Is Not Illusory*

Forecast argues that because only the named insured can satisfy the SIR obligation, the coverage afforded by the policy to an additional insured is illusory. We disagree. A contract is illusory if performance is "conditional on some fact or event that is wholly under the promisor's control and bringing it about is left wholly to the promisor's own will and discretion." (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 15 [96 Cal.Rptr.2d 179, 999 P.2d 71].) The

condition of requiring the named insured to pay the deductible amount before coverage is triggered is not a fact or event under Steadfast's control or discretion. After the payment is made, Steadfast must cover the named and additional insured. Forecast is protected by its hold harmless agreements with its subcontractors, which will require the subcontractors to provide a defense and pay damages regardless of insurance coverage. Steadfast's policy is not illusory.

## III

The judgment is affirmed. The respondent shall recover its costs on appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 12, 2010, S181246.