Filed 11/13/24 William Lyon Homes v. Steadfast Ins. Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| WILLIAM LYON HOMES, INC., et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>STEADFAST INSURANCE COMPANY,<br><br>    Defendant and Appellant. | G061834<br><br>(Super. Ct. No. 30-2018-01027345)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge. Affirmed. Motion to Strike. Granted. Motion for Leave. Denied as moot.

Newmeyer & Dillion, Gregory L. Dillion, John A. O'Hara and C. Kendie Schlecht for Plaintiffs and Appellants.

Horvitz & Levy, David M. Axelrad and Melissa B. Whalen; Sinnott, Puebla, Campagne & Curet, Randolph P. Sinnott and Winnie C. Louie for Defendant and Appellant.

\*　　　\*　　　\*

This is an insurance coverage dispute between William Lyon Homes, Inc., and its former parent corporation, William Lyon Homes[1] (collectively, Builder), on the one hand, and Steadfast Insurance Company (Steadfast), on the other hand, relating to the interpretation of a Home Builder's Protective Insurance Policy issued by Steadfast to Builder (the initial policy), and its two renewals.[2] The trial court ruled against Builder on its first amended complaint, against Steadfast on its cross-complaint, and against Builder on its cross-complaint to Steadfast's cross-complaint, and then entered judgment in accordance with its pretrial rulings on multiple dispositive motions and its decision following a bifurcated court trial. Both parties appealed.

---

[1] William Lyon Homes, Inc., is now owned by Taylor Morrison.

[2] For convenience and to avoid confusion, we refer to the original policy as the "initial policy" and the initial policy, together with the renewals, as the "policies." We also refer to the renewals as the "renewal policies." By using this terminology, we express no opinion on—and do not decide— whether the initial policy and renewal policies constitute three separate policies (as Steadfast contends) or a single policy (as Builder contends). Based on our resolution of these appeals, we need not resolve that dispute.

Builder appeals the trial court's ruling on the parties' cross-motions for summary adjudication[3] that the self-insured retention (SIR) aggregate set forth in an endorsement to the initial policy, which provided that the SIR aggregate was "per project not per policy" (Per Project Aggregate SIR), applied separately to each consecutive annual period under that policy (and that the Per Project Aggregate SIRs in the two renewals also applied annually). Builder also appeals the court's order sustaining without leave to amend Steadfast's demurrer to Builder's cross-complaint seeking an attorney fee award under *Brandt v. Superior Court* (1985) 37 Cal.3d 813 (*Brandt* fees) for the fees it incurred to defend Steadfast's cross-complaint for recoupment/reimbursement of amounts Steadfast had paid to Builder.

We affirm the trial court's rulings on the parties' cross-motions for summary adjudication and the resulting judgment against Builder on all causes of action in its first amended complaint. We conclude, based on the unambiguous policy language, that the annual reset provision applies to the Per Project Aggregate SIR. We also affirm the court's order sustaining Steadfast's demurrer to Builder's cross-complaint for *Brandt* fees. Builder's cross-complaint was based solely on Steadfast's filing of a cross-complaint against Builder to recoup payments Steadfast had paid to Builder under the policy, which Builder contended was retaliatory and without merit. Steadfast's filing of a cross-complaint to recoup some of the benefits it had paid is privileged under Civil Code section 47 and, without more, cannot support a claim for bad faith.

---

[3] We refer to the parties' motions for summary adjudication as cross-motions even though they were not filed simultaneously because they both sought adjudication of the same issue of duty/policy interpretation raised in Builder's first amended complaint.

As to Steadfast's cross-appeal, Steadfast challenges the trial court's decision, following a bifurcated court trial on Steadfast's cross-complaint, that the policies did not prohibit Builder from using first-year warranty repair costs it had paid in connection with its residential projects—amounts that are excluded from coverage under the policies—to satisfy its SIR amounts. Based on the unambiguous language of the policies, we agree with the court's conclusion. The policies did not specify that only covered repair costs could be used to erode (or satisfy) the SIRs.

The judgment is affirmed.

FACTS AND PROCEDURAL HISTORY

I.

FACTS RELATING TO THE POLICY

Builder developed and constructed numerous residential housing projects in multiple states from 1999 through 2020. The close of escrow dates for the homes in Builder's projects typically spanned multiple years.

Builder purchased the initial policy from Steadfast in 2001. The term was for 38 months, from November 1, 2001 through December 31, 2004. The premium for the initial policy was approximately $15 million.

The initial policy consisted of the declarations page, the form policy provisions, the schedule of forms and endorsements, and the endorsements. Item 3 of the declarations page listed the limits of insurance for each of the five coverage parts, A through E, that appear in Section 1 of the initial policy form entitled "Coverages." Coverage C covered sums Builder was contractually obligated to pay as "'repair costs'"[4] for "'construction

---

[4] "'Repair costs'" are defined in the policies as "the cost to repair or replace a 'construction defect[' and] includes all cost[s] covered by the 'Home Builder's Limited Warranty'."

4

defects'" under "'Home Builders Limited Warranty'" agreements issued by Builder. For Coverage C, the policies stated that "[t]his insurance does not apply to: [¶] Normal Customer Service Expenses" (boldface omitted), which included "[a]ny 'repair costs' for a 'construction defect' which first arises within twelve (12) months of the first sale of a 'home'."[5] For "Each Home – Repair Cost – Coverage C," the initial policy provided a limit of "[t]he sales price of each home subject to a maximum of $2,500,000 [for] any one structure." Coverage D covered amounts Builder would become obligated to pay as damages because of "'property damage'" to "'[Builder's] work'." Coverage D was limited to "'property damage'" to Builder's work sold during the initial policy period caused by a "'construction occurrence' that takes place in the 'coverage territory.'"[6] The "Each Construction Occurrence Limit – Coverage D" was $25,000,000.

Section IV of the initial policy is entitled "SELF INSURED RETENTION." (Boldface omitted.) Subdivision 1 of that section provides that "[Steadfast's] obligations under SECTION 1 – **COVERAGES** to pay damages or 'repair costs' applies only to the amounts of damages or 'repair costs' in excess of any 'Self Insured Retention' amounts stated in the Declarations."

Subdivision 3 of Section IV of the initial policy addresses the "'Self Insured Retention' Amounts." Subdivision 3 defines two distinct types

---

[5] "Normal Customer Service Expenses" is not defined in Section IV – Definitions, but instead appears as a heading under Coverage C, Section 2 (Exclusions), subdivision (a) (Normal Customer Service Expenses).

[6] Only Coverages C and D are at issue in this dispute. Coverage A addressed bodily injury and property damage, Coverage B addressed personal and advertising injury liability, and Coverage E addressed fungus-related medical payments.

of SIR amounts in two, separate lettered subdivisions: First, subdivision 3(a) defines an "Each Occurrence" SIR, which is "the most [Builder] will pay for all 'self insured retention' amounts arising out of one 'occurrence', offense or 'construction occurrence' or any single loss involving any combination of 'occurrence', offense and 'construction occurrence'."[7] (We refer to this type of SIR as an "Each Occurrence SIR.") Second, subdivision 3(b) defines the "Self-Insured Retention Aggregate," as "the most [Builder] will pay for all 'self insured retention' amounts under this policy." That subdivision states "[i]f no value is shown, then the 'self insured retention' aggregate shall be unlimited." (We refer to this type of SIR aggregate as an "Aggregate All Occurrences Per Policy SIR.")

After the two indented subparagraphs (a) and (b) defining the two types of SIR amounts, subdivision 3 includes a new paragraph (not indented, but rather flush left and aligned with the main subdivision "3. 'Self Insured Retention' Amounts") containing the following language: "The '*Self Insured Retention' amounts* of this Coverage Part *apply separately to each consecutive annual period . . . .*" (Italics added.) (We refer to this as the "annual reset provision.") The parties agree that the phrase "of this Coverage Part" as used in Section IV refers only to that section pertaining to SIRs.

The payments Builder may use to satisfy its SIR obligations are specified in the definitions section of the initial policy at Section VI, subdivision 25. SIR is defined as "the amount you . . . must pay for: [¶] a. All

---

[7] Construction occurrence is defined under the initial policy as follows: "A 'construction occurrence' involving substantially similar damages to 'your work' within the same project, phase, subdivision, community, neighborhood or other similar local area and constructed under a common set of contract documents by substantially the same subcontractors will be considered a single 'construction occurrence'."

amounts which you become legally obligated to pay as damages or 'repair costs' as defined in this policy; and [¶] b. The legal expenses, expert and other witness expenses, court costs, bond premiums and such other usual and incidental expenses attendant to claim and litigation costs." (Boldface omitted.) "'Repair costs'" are defined in subdivision 23 of Section IV as "the cost to repair or replace a 'construction defect'. It includes all cost[s] covered by the 'Home Builder's Limited Warranty'."

Item 4 of the declarations page addressed the dollar amounts of the SIRs. For the Each Occurrence SIR, the declarations page said "$SEE ENDORSEMENT." The endorsement that set the limits for Item 4 of the declarations set the Each Occurrence SIR at $250,000. For the Aggregate All Occurrences Per Policy SIR, the declarations page said "$N/A" which meant the policy contained no aggregate, policy-wide SIR. There is no dispute that "$N/A" meant that there was no applicable dollar amount because Builder did not buy an aggregate, policy-wide SIR.

Although Builder did not purchase an Aggregate All Occurrences Per Policy SIR, the endorsement to the initial policy added a different type of SIR—the Per Project Aggregate SIR.

The endorsement to the initial policy stated the SIR applies to "damages, defense costs and warranty and customer service costs of Builder and/or trade contractor." The endorsement was described in the schedule of forms and endorsements as a "Manuscript Endorsement."[8] At the top, the endorsement stated: "THIS ENDORSEMENT CHANGES THE POLICY.

---

[8] The term "manuscript" in the insurance industry generally refers to an insurance policy that is entirely nonstandard and drafted for the particular risk taken. (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1074.)

7

PLEASE READ IT CAREFULLY." A box in the middle of the endorsement states: "This endorsement modifies insurance provided by the following: [¶] Home Builders Protective Insurance Policy Form."

Builder and Steadfast renewed the policy twice. The first renewal covered the second policy period, from December 31, 2004, through December 31, 2007, and the second renewal covered the third policy period, from December 31, 2007, through December 31, 2010. These renewal policies contained similar—but not identical—Per Project Aggregate SIR language. The parties and the trial court treated the Per Project Aggregate SIR language in the policies as materially the same despite the different language used. For example, the initial policy endorsement stated "per project not per policy"; the first renewal used the phrase "Per Project SIR Aggregate Stop"; and the second renewal used the phrases "Per Project Self Insured Retention Aggregate" and "Each Project Aggregate Self Insured Retention for 'Construction Occurrences'." But despite the somewhat differing terminology, an important term did not change: Like the initial policy, both renewals provided the SIR amounts in the policy apply separately to each consecutive annual period.

## II.

### PROCEDURAL HISTORY

A dispute arose between the parties after Builder submitted multiple demands to Steadfast to reimburse it for amounts Builder claimed it had overpaid for its SIRs under the policies. Builder filed its initial complaint against Steadfast on October 22, 2018, alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Builder filed a first amended complaint on March 29, 2019, adding a cause of action for declaratory relief. Builder alleged the initial policy and the two renewals

8

were one policy and that pursuant to the Per Project Aggregate SIR in the initial policy, Builder was obligated "to pay only a single per project SIR for each project and not multiple per project SIRs for later policy periods." Builder alleged Steadfast never notified it that the "'per project not per policy'" aggregate SIR language in the initial policy was changing in the renewals, so that language must be read into both renewals.

Steadfast filed a cross-complaint against Builder on May 22, 2019, alleging multiple claims for declaratory relief–repair costs, declaratory relief–annual SIR, declaratory relief–annual aggregate SIR, restitution/unjust enrichment, money had and received, constructive trust and recoupment. In its cross-complaint, Steadfast sought reimbursement of amounts it had paid to Builder on account of non-covered first-year repair costs that Builder had applied toward its SIR amounts. Steadfast took the position Builder could not apply its first-year repair costs toward each of the policies' Each Occurrence SIRs.

Builder filed a motion for summary adjudication on its first amended complaint on the issue of Steadfast's duty to provide coverage to Builder under the Per Project Aggregate SIR. Builder contended the phrase "'per project not per policy'" in the endorsement meant that for any project, Builder would only have to meet the $500,000 SIR aggregate once—no matter how long the initial policy (and the renewals) remained in effect. Steadfast opposed the motion.

While the Builder's motion for summary adjudication was under submission, Steadfast filed its own motion for summary adjudication on the first and third causes of action in Builder's first amended complaint for breach of contract and breach of the implied covenant of good faith and fair dealing, as well as certain of Steadfast's affirmative defenses. Steadfast

9

sought summary adjudication that "the aggregate self-retention obligations of [Builder] reset on a per annual period, per project basis in the policies issued by [Steadfast]." Steadfast also sought summary adjudication on the issue of breach of the implied covenant of good faith and fair dealing in Builder's first amended complaint. Builder opposed the motion.

The trial court denied Builder's motion on October 26, 2020, and granted Steadfast's motion on December 30, 2020. The court determined the "endorsement's modification of 'per project not per policy' did not eliminate the policy form's provision that the aggregate applied separately on an annual basis." The court interpreted the endorsement to mean that the $500,000 SIR aggregate was for each project, not for the entire policy. The court reasoned that "[b]ecause the policy covered numerous projects, the endorsement had to make the additional clarification that the SIR aggregate was per project, not per policy." The court reasoned that Builder's "interpretation would require the court to completely disregard the express provisions of the policies." Builder moved for leave to file a second amended complaint and for a trial continuance, which the court denied.

The parties stipulated to bifurcate the remaining issues for trial and to conduct the trial in two phases, including an initial court trial based on briefing and argument from counsel only on stipulated issues and a second phase, if necessary, on any remaining issues before the court or a jury. The parties stipulated to nine issues to be decided by the court in phase one, relating to six causes of action in Steadfast's cross-complaint[9] and Builder's second cause of action for declaratory relief in its first amended complaint.

---

[9] Those six causes of action were for "(1) declaratory relief–repair costs; (2) declaratory relief–annual SIR; (3) restitution/unjust enrichment; (4) money had and received; (5) constructive trust . . . ; and (6) recoupment."

10

Steadfast's claims against Builder related to its contention that first-year warranty repair costs that are expressly excluded from coverage could not be used by Builder to satisfy or erode the Each Occurrence SIR under the policies.

The trial on phase one took place over two days, and the court issued its statement of decision on January 21, 2022. The court declined to issue declaratory relief to Builder on its second cause of action. The court ruled against Steadfast on its first and fourth through seventh causes of action in its cross-complaint based on the court's interpretation of the policies to mean that first-year warranty repair costs could be applied by Builder to satisfy the Each Occurrence SIR as to all three policy periods.

Meanwhile, Builder had sought and obtained leave to file a cross-complaint to Steadfast's cross-complaint to assert a claim for bad faith and recovery of *Brandt* fees. Builder filed its cross-complaint on November 8, 2021. The court sustained Steadfast's demurrer to the cross-complaint without leave to amend on July 14, 2022, determining Builder had not alleged that Steadfast mishandled any claims by Builder or wrongfully withheld policy benefits, but rather Steadfast was suing for *reimbursement* of amounts it paid under the policy under a reservation of rights, which is conduct that cannot support a bad faith cause of action. As a result of the ruling on the demurrer, which disposed of all remaining claims in the case, the trial court vacated the second phase of the trial.

11

The court entered judgment on the entire action on August 16, 2022, denying both parties any affirmative relief.[10] Both parties timely appealed.

DISCUSSION[11]

I.

BUILDER'S APPEAL

A. *The Parties' Cross-Motions for Summary Adjudication on the Issue of Duty Relating to the Per Project Aggregate SIR*

Builder contends the trial court erred in denying its motion for summary adjudication and granting Steadfast's cross-motion for summary adjudication on the issue of Steadfast's duty as it pertains to the Per Project Aggregate SIR. Specifically, Builder argues the Per Project Aggregate SIR was a new, independent, and different aggregate feature that was not subject to the annual reset provision of Section IV of the initial policy, and that the language "per project not per policy" meant Builder would only have to meet the aggregate SIR for a particular project *once* during the entire life of the policy (and any renewals), even if homes within a particular project closed escrow during future policy periods. Although we agree the Per Project

---

[10] As reflected in the judgment, "[o]n January 8, 2021, the court [had] ruled that declaratory relief on Steadfast's third cause of action in its cross-complaint was unnecessary and superfluous."

[11] The appellate briefing in this case was extensive, understandably so considering the complexity of the background and legal issues. Other than the arguments and evidence we declined to consider as a result of our ruling on Steadfast's motion to strike (addressed in Section I.B. below), we have reviewed and considered all facts, issues and arguments raised by the parties whether or not they are specifically addressed in this opinion.

12

Aggregate SIR added via the endorsement was a new and different type of aggregate SIR than what was stated in Item 4 of the declarations page of the initial policy and in Section IV of the policy, we conclude the trial court correctly determined it was subject to the annual reset provision.

    1.   Standard of Review and Rules of Policy Interpretation.

We review de novo the court's rulings on the parties' summary adjudication motions regarding the interpretation of the provisions of a policy of insurance on undisputed facts. (*County of San Diego v. Ace Property & Casualty Ins. Co.* (2005) 37 Cal.4th 406, 414.)

Interpretation of an insurance policy is a question of law, and the policy language shall be given its "plain meaning or the meaning a layperson would ordinarily attach to it." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) "'Insurance policies are contracts and, therefore, are governed in the first instance by the rules of construction applicable to contracts.' [Citation.] "'Thus, 'the mutual intention of the parties at the time the contract is formed governs interpretation.' [Citation.] If possible, we infer this intent solely from the written provisions of the insurance policy. [Citation.] If the policy language 'is clear and explicit, it governs.'"" [Citation.] 'When interpreting a policy provision, we must give its terms their "'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.'" [Citation.] We must also interpret these terms "in context" [citation], and give effect "to every part" of the policy with "each clause helping to interpret the other.""" (*John's Grill, Inc. v. The Hartford Financial Services Group, Inc.* (2024) 16 Cal.5th 1003, 1013.)

"'A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole.' [Citation.]

"'The mere fact that a word or phrase in a policy may have multiple meanings does not create an ambiguity." [Citation.] Rather, the meaning of the word or phrase must be considered in light of its context.' [Citation.] "'If the terms are ambiguous . . . , we interpret them to protect "'the objectively reasonable expectations of the insured.'" [Citations.] Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer.'"" (*John's Grill, Inc. v. The Hartford Financial Services Group, Inc., supra,* 16 Cal.5th at p. 1014.)

Here, both parties asserted in their cross-motions for summary adjudication that the policies are unambiguous and should be interpreted based on their plain language.

2. The Per Project Aggregate SIR Applied Separately to Each Consecutive Annual Period under the Policies.

The issue raised by Builder on appeal is whether the annual reset provision in Section IV applies to the Per Project Aggregate SIR added to the policy by the endorsement. We conclude it does.

A SIR "'refers to a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied *before* there is any coverage under the policy.'" (*Forecast Homes, Inc. v. Steadfast Ins. Co.* (2010) 181 Cal.App.4th 1466, 1471 (*Forecast Homes*).) As explained by Builder in its trial brief filed in the underlying action, "the [Home Builders Protective] policy requires the builder to promptly respond to pre-litigation defect claims by homeowners and to perform warranty work at its own expense up to the amount of the self-insured retention ('SIR') listed in the policy. The SIR is a dollar amount specified in an insurance policy that is to be paid by the insured (Plaintiffs) before the insurer (Steadfast) is required to provide insurance coverage and respond to a claim or loss." An *aggregate* SIR

14

provision limits the insured's risk in the event of several covered events, such that payments made by the insured are aggregated until the aggregate limit is exhausted. "Thereafter, the insurance will cover any additional claims from dollar one." (*General Star Indemnity Co. v. Superior Court* (1996) 47 Cal.App.4th 1586, 1594.) A SIR *aggregate* is for the "benefit of the insured." (*Ibid.*) "An aggregation feature . . . can therefore be expected to cost an additional premium amount." (*Ibid.*)

In reviewing the entirety of the policy—including the declarations page, applicable SIR endorsement, and form policy provisions— we agree with Builder that the Per Project Aggregate SIR added a new and different SIR aggregation feature to the initial policy. However, we disagree with Builder that the form policy provisions pertaining to SIRs do not apply to the Per Project Aggregate SIR and that the phrase "per project and not per policy" means, as Builder contends, that for any one project, the Per Project Aggregate SIR applies only once, regardless of whether claims for a particular project extend into future policy periods. Builder reaches this conclusion based on its erroneous assumption that the annual reset provision cannot apply to SIRs added by endorsement that are not specifically listed in Section IV, unless the endorsement states the form policy provisions continue to apply. As Builder points out, the endorsement did not specifically state that the Per Project Aggregate SIR was an annual aggregate SIR. It simply stated a dollar amount that would apply "per project not per policy."

Builder's argument fails to consider the function of an endorsement that *modifies—but does not contradict*—a policy. "[A]n endorsement is an amendment to or modification of an existing policy of insurance. It is not a separate contract of insurance. Standing alone, an endorsement means nothing. 'Endorsements on an insurance policy form a

15

part of the insurance contract [citation], and the policy of insurance with the endorsements and riders thereon must be construed together as a whole [citation].' [Citation.] 'Conditions stated in the policy as such *apply to the endorsement.*'" (*Adams v. Explorer Ins. Co.* (2003) 107 Cal.App.4th 438, 451, italics added.) "'[I]f there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls.'" (*Venoco, Inc. v. Gulf Underwriters Ins. Co.* (2009) 175 Cal.App.4th 750, 766.)

Builder acknowledges in its opening brief that the policy form governs an insured's SIR obligations to the extent they have not been modified by an endorsement. As explained below, however, although the endorsement added a new (per project) aggregate SIR, it did not alter the terms of the policy form regarding the insured's SIR obligations under the policy or create any conflict between the endorsement and the policy. It did not create a conflict between the endorsement and the policy because the declarations page clearly stated the Aggregate All Occurrences Per Policy SIR was "$N/A"; i.e., *not applicable.*

In effect, the endorsement *added* the Per Project Aggregate SIR to the policy as a new type of aggregate SIR. Item 4 of the declarations page referred to the endorsement that specified the amount of the Each Occurrence SIR and added a Per Project Aggregate SIR. Section IV of the policy form applied to all SIRs "of this Coverage Part." Because conditions stated in a policy apply to an endorsement, the annual reset provision in that Coverage Part applied to the Per Project Aggregate SIR. Like the initial policy, the two renewals contained per project aggregate SIRs that reset each year.

By arguing that the phrase "per project not per policy" means that once the aggregate SIR is met for any one project, it is satisfied for all

eternity, Builder is attempting to create a conflict between the endorsement, the declarations page, and the form policy provisions where none exists. Builder contends the annual reset provision in Section IV conflicts with the endorsement. It does not. Builder's interpretation of the phrase "not per policy" is out of context and fails to consider the entire initial policy as it pertained to SIRs. An aggregate SIR that applies "per project not per policy" logically means it applies "per project," and not to all SIR amounts for "all occurrences." In other words, an aggregate SIR that applies "per project" and "not per policy" distinguishes itself from the *inapplicable* Aggregate All Occurrences Per Policy SIR.[12]

Builder argues SIRs are considered a limitation or restriction on coverage and, therefore, the language must be strictly construed against Steadfast. Builder relies on *Vons Companies, Inc. v. United States Fire Ins. Co.* (2000) 78 Cal.App.4th 52, *Pennsylvania General Ins. Co. v. American Safety Indemnity Co.* (2010) 185 Cal.App.4th 1515, and *Delgado v. Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, among other cases, for this proposition. Builder's argument is misplaced because the Per Project Aggregate SIR, when considered together with the declarations page and form policy provisions, is clear and unambiguous as to its meaning and application. We therefore do not construe the language in favor of Builder; we simply apply the plain meaning of the policy language. (*Delgado v. Heritage Life Ins. Co., supra,* at p. 271; see *Forecast Homes, supra,* 181 Cal.App.4th at

[12] Notably, Builder acknowledged in its opening brief that the language in Section IV, subdivision 3(b) clarified that the Aggregate All Occurrences Per Policy SIR would apply to "all SIR amounts due under the Policy or on a 'per policy' basis." Similarly, Builder defined the all occurrences SIR aggregate that was made expressly not applicable to the policy as a "Aggregate All Occurrences *Per Policy* SIR" in its briefing. (Italics added.)

pp. 1475–1476 [rejecting insured's contention that unambiguous SIR endorsement is subject to heightened level of scrutiny and must be interpreted narrowly and strictly against insurer].) Only in cases where the ambiguity "cannot be eliminated by the language and context of the policy [do] we invoke the principle that ambiguities are construed against the party who caused the uncertainty—the insurer—in order to protect the insured's reasonable expectations of coverage." (*Vons Companies, Inc. v. United States Fire Ins. Co., supra,* at p. 58.) "'We will not adopt a strained or absurd interpretation to create an ambiguity where none exists. The policy terms must be construed in the context of the whole policy and the circumstances of the case and cannot be deemed ambiguous in the abstract.'" (*Forecast Homes, supra,* at p. 1475.)

Although Builder is correct that Steadfast could have included language directly in the endorsement that the Per Project Aggregate SIR applied annually,[13] its failure to do so did not create an ambiguity or inconsistency regarding whether the annual reset provision in Section IV applied. Contrary to Builder's contention, the phrase "per project not per policy" logically means the $500,000 cap applies to claims involving each project, rather than all claims against Builder across all projects. As

---

[13] The endorsement to the second renewal is notably different in this respect. The endorsement replaced Section IV of the policy regarding SIRs to, among other things, specifically list and describe the Per Project Aggregate SIR. In addition, the language in Section IV stating that the SIRs apply separately to each consecutive annual period was broadened to refer to SIR amounts "of this policy" rather than "of this Coverage Part."

18

explained by the trial court, this language does not modify the explicit sentence stating that the SIR resets each year.[14]

We also reject Builder's contention that interpreting the Per Project Aggregate SIR to apply annually would render the $250,000 Each Occurrence SIR created by the same endorsement "mere surplusage." Builder argues the term "construction occurrence" should be interpreted to apply on a project-wide basis, so any Per Project Aggregate SIR that applies annually would be unnecessary. We disagree with Builder's interpretation of the policies' definition of "construction occurrence," which explicitly and unambiguously makes it possible for there to be multiple occurrences on any one project. The policies define "'construction occurrence'" for Coverage C as "an event or happening including continuous or repeated exposure to substantially the same general harmful conditions." A construction occurrence involving "substantially similar damages" to the Builder's work within the same project by substantially the same subcontractors will be considered a single "'construction occurrence.'" This language makes clear that where a construction occurrence happens that does not involve "substantially similar damages" to the Builder's work within the same project "by substantially the same subcontractors," there will be more than one construction occurrence, each subject to the $250,000 per occurrence SIR.

_____

[14] In light of our interpretation of the phrase "per project not per policy" in the endorsement to the initial policy and our conclusion that the Per Project Aggregate SIR applied annually during the initial policy period, we need not address Builder's contention that the Per Project Aggregate SIR (as interpreted by Builder to apply only once) carried over to the second and third policy periods, and any effort by Steadfast to change the policy by removing the "per project not per policy" language was ineffectual because Steadfast did not give Builder notice it was doing so.

And that is precisely why having a $500,000 Per Project Aggregate SIR could provide an additional benefit to Builder.

In sum, the Each Occurrence SIR was just that—a $250,000 annual cap for each separate occurrence or construction occurrence. The Per Project Aggregate SIR in the endorsement capped Builder's annual risk *per project* at $500,000 under the initial policy, $1 million for each annual period under the second renewal period, and $3 million for each annual period under the third renewal period.

Notably, Builder did not contend in the trial court, and does not contend now, that the meaning of "per project not per policy" is ambiguous. Rather, Builder contends the trial court simply misapplied legal principles of policy interpretation. Nevertheless, Builder asks us to consider evidence of Steadfast's intent when it wrote Builder's policy regarding the meaning of the Per Project Aggregate SIR. Builder points to excerpts from a letter written by a Steadfast executive to a different insured that are referenced in an unpublished order from the Central District of California in a case by that other insured against Steadfast, *Van Daele Development Corp. v. Steadfast Insurance Company* (C.D.Cal., Sept. 26, 2014, No. EDCV 12-01294) *(Van Daele).*[15] Builder contends this extrinsic evidence shows Steadfast interpreted the same "per project not per policy" term in Builder's policy in the same way that Builder now asks us to interpret it. We find this argument unpersuasive.

First, we have concluded—as the trial court found, and as the parties both argued in seeking summary adjudication—that the policies are not ambiguous. "Although parol evidence may be admissible to determine

---

[15] In ruling on the parties' motions for summary adjudication, the trial court took judicial notice of the *Van Daele* order at the request of both parties.

whether the terms of a contract are ambiguous [citation], it is not admissible if it contradicts a clear and explicit policy provision." (*Hervey v. Mercury Casualty Co.* (2010) 185 Cal.App.4th 954, 961.) Here, the meaning of the Per Project Aggregate SIR in the context of the entire policy is not ambiguous.

Second, even setting aside this fundamental rule of parol evidence, Builder has not shown how a statement made by one of Steadfast's executives as part of a letter that was cited in an unpublished order by a trial court in a different case, involving different parties and a different policy, is relevant here—particularly where that other policy did not include the "per project not per policy" language that is at issue here.[16]

Finally, we disagree with Builder's argument that if we conclude, as the trial court did, that the annual reset provision applies to the Per Project Aggregate SIR amount, then "[Builder] will effectively end up with an SIR obligation that reinstates annually but which limits the SIR amount it must [meet] each year for 'all' SIRs." Builder's argument is based on its assumption that the annual reset provision is part of subdivision 3(b) of Section IV (i.e., the Aggregate All Occurrences Per Policy SIR). It is not. The annual reset provision expressly applies to *all* SIR amounts of "this Coverage Part," not just to the Aggregate All Occurrences Per Policy SIR.

We conclude the trial court correctly determined the language that the SIR amounts of Article IV "apply separately to each consecutive

---

[16] The court in *Van Daele* determined the letter from Steadfast did not demonstrate the policies' unambiguous terms were "reasonably susceptible to Van Daele's reading of them," but instead went to the issue of intent. Further, the letter from Steadfast was sent to Van Daele after the policy was already issued and, like here, Steadfast's purported intent with respect to how an aggregate per project SIR would work did not comport with the actual terms of the policy purchased by Van Daele.

annual period" applied to the new Per Project Aggregate SIR added by the endorsement.

B. *Steadfast's Motion to Strike Builder's Evidence Submitted in Reply*

In its appellant's reply brief, Builder attempted to provide this court with deposition testimony that was not before the trial court on the motions for summary adjudication. It contends it did so for the purpose of refuting Steadfast's argument that, under the definition of "construction occurrences" in the policy, there could be multiple construction occurrences on a single project.[17] Steadfast moved to strike the new evidence.[18] Builder opposed Steadfast's motion to strike the evidence, and Steadfast attempted to file a reply to Builder's opposition.[19] We grant Steadfast's motion to strike and decline to consider the new evidence. Our review of an order granting or

---

[17] According to Builder, the deposition testimony was offered to show the parties' "course of dealing or usage of trade or . . . course of performance" pursuant to Code of Civil Procedure section 1856, subdivision (c), i.e., "how [Builder] and Steadfast adjusters *administered* and *applied* the SIRs in their normal course of dealing and that Steadfast's employees never argued in administering the Policy that multiple construction occurrence SIRs or multiple project aggregate SIRs applied for damages to each component on a home on a single project."

[18] Steadfast also moved to strike evidence submitted by Builder in connection with its cross-respondents' brief. Builder does not oppose this aspect of the motion to strike, acknowledging Steadfast made a reasonable argument to strike it because it is "cumulative of other admitted testimony and evidence and is not necessary to support the defenses argued in Cross-Respondents' Brief."

[19] Reply briefs on motions are not authorized by the California Rules of Court. (Cal. Rules of Court, rule 8.54, subd. (a).) Therefore, we did not consider Steadfast's reply in response to Builder's opposition to the motion to strike.

denying a summary adjudication motion is limited to the facts before the trial court when it ruled on the motion. (*Mireskandari v. Edwards Wildman Palmer LLP* (2022) 77 Cal.App.5th 247, 264.) Further, Steadfast's argument was in response to *Builder's argument* in its opening brief that interpreting the Per Project Aggregate SIR to apply annually would render the Each Occurrence SIR mere surplusage. Steadfast was not raising a new issue in its respondent's brief but rather referring to the policy language defining what constitutes a "construction occurrence" under the policy to refute Builder's argument. Steadfast's legal argument regarding the meaning of the policy, and its use of hypothetical examples, did not open the door for Builder to inject evidence on appeal that was not before the trial court. Steadfast's motion to strike is therefore granted, and its motion for leave to file a supplemental brief is denied as moot.

## C. Builder's Cross-Complaint Failed to State a Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing

Next, Builder appeals the trial court's order sustaining Steadfast's demurrer to Builder's cross-complaint and ruling that California law does not permit recovery of *Brandt* fees when an insurer prosecutes a cross-complaint to claw back policy benefits already paid.

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ""We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context."'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.)

23

When the trial court sustains a demurrer without leave to amend, we decide whether there is a reasonable possibility the defect can be cured by amendment. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.) "'We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. [Citation.]'" (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 837.)

Steadfast's cross-complaint against Builder involved whether Builder could apply repair costs that first arose within the first 12 months after a home is sold (first-year warranty repair costs), which are excluded from coverage under the policies, to satisfy its Each Occurrence SIR. Steadfast alleged it had reimbursed Builder for these amounts under a reservation of rights. Steadfast sought reimbursement of these amounts it had paid to the Builder, which Steadfast alleged exceeded $13 million.[20]

In its cross-complaint to Steadfast's cross-complaint, Builder alleged Steadfast and Builder had reached an accord and satisfaction regarding the issue raised in Steadfast's cross-complaint and that Steadfast had reimbursed Builder most of what it was owed pursuant to an agreement and without reserving any rights. Builder argued Steadfast had reneged on the agreement, and its cross-complaint for reimbursement therefore was in bad faith, unreasonable and improper. Among other things, Builder alleged Steadfast had breached its duty by "[u]nreasonably withholding policy benefits from [Builder]." Builder alleged that as a result of Steadfast's bad

---

[20] At trial, the court decided against Steadfast on its cross-complaint, ruling that first-year warranty repair costs could be applied to erode the SIR amounts under each policy.

faith conduct, Builder had incurred attorney fees and costs "to obtain, vindicate and retain benefits under the Policy."

In sustaining Steadfast's demurrer to Builder's cross-complaint without leave to amend, the trial court ruled as follows:

"Here, the Cross-Complaint alleged that Steadfast fully and thoroughly investigated and analyzed the issue of whether first year repair costs eroded [Builder's] SIR obligations after [Builder] submitted their claims, decided that those costs did erode [Builder's] SIR obligations, and that [Builder was] entitled to reimbursement. . . . With [Builder's] approval, Steadfast promptly reimbursed 50% of the overpayments and would conduct an audit of the other 50%. . . . After the initial few audits, the parties agreed to settle. And pursuant to the settlement, Steadfast paid 97.5% of the claimed amounts. . . . There are no allegations that Steadfast mishandled the claims process or delayed in paying what [Builder] was owed. The Cross-Complaint states that Steadfast unreasonably withheld policy benefits. . . . However, the Cross-Complaint equated Steadfast's Cross-Complaint against [Builder] to recover payment of benefits as withholding policy benefits. . . . The bad faith claim is essentially based on Steadfast's decision to file a cross-complaint against [Builder] to recover what it previously paid. . . . Such a claim is not supported by any authority. There is no reasonable possibility that the defect can be cured by amendment. Accordingly, the demurrer is sustained without leave to amend."

On appeal, Builder argues the trial court adopted an overly restrictive view of California case law regarding when *Brandt* fees are allowed and that it had sufficiently alleged Steadfast's cross-complaint was a retaliatory cross-complaint filed when Steadfast was aware it had no right to

25

claw back the payments. We disagree and conclude the demurrer was properly sustained without leave to amend.

Attorney fees generally are not recoverable in an action except where a contract or statute provides otherwise. (Code Civ. Proc., § 1021.) In *Brandt v. Superior Court, supra,* 37 Cal.3d 813, the California Supreme Court established an insured's right to recover attorney fees in a bad faith action against the insurer. (*Id.* at p. 819.) The fees recovered "may not exceed the amount attributable to the attorney's efforts to obtain the rejected payment due on the insurance contract. Fees attributable to obtaining any portion of the plaintiff's award which exceeds the amount due under the policy are not recoverable." (*Ibid.*) The policy behind *Brandt* is to compensate the insured for the cost of hiring an attorney to recover policy benefits. (*Ibid.*) The amount of fees incurred to obtain an award of compensatory damages for bad faith or punitive damages cannot be included in a *Brandt* fee award. (*Id.* at pp. 819–820.)

"[A] bad faith claim against an insurer for initiating litigation against the insured fails as a matter of law when the insured does not contend the insurer acted unreasonably in investigating or paying the underlying insurance claim." (*Old Republic Ins. Co. v. FSR Brokerage, Inc.* (2000) 80 Cal.App.4th 666, 669–670.) Where, as here, the insured's "theory of bad faith rests *squarely* on the allegations in [the insured's pleading] alone . . . these allegations fall within the protection of the absolute privilege found in Civil Code section 47." (*Id.* at p. 687.)

Builder relies on a federal district court opinion, *Hous. Cas. Co. v. Cibus US LLC* (S.D.Cal., Aug. 23, 2023, No. 19cv828e) 2023 U.S.Dist. Lexis

26

148766 (*Houston*),[21] for the proposition that there is no distinction between attorney fees incurred to obtain coverage benefits where an insurer denies coverage and attorney fees incurred to retain coverage benefits when an insurer tries to recoup them. As the *Houston* court pointed out, however, cases like this one and *Old Republic Ins. Co. v. FSR Brokerage, Inc., supra,* 80 Cal.App.4th 666, where "the insured asserted a bad faith claim against its insurer *for filing a complaint . . .* but it did not contend that the insurer otherwise acted unreasonably in investigating, handling, or failing to pay the underlying insurance claim" are distinguishable and barred by the litigation privilege. (*Houston, supra,* 2023 U.S.Dist. Lexis 148766, p. *5, fn. 4, italics added.) In *Houston*, unlike here, the insured had premised its theory of bad faith "on [the insurer's] unreasonable coverage positions and biased investigation into the claim, which resulted in the initiation of the declaratory and recoupment action." (*Ibid.*)

Here, Builder's cross-complaint seeking recovery of *Brandt* fees was based solely on Steadfast filing an allegedly retaliatory cross-complaint;[22] in other words, the tort alleged by Builder is the lawsuit for reimbursement. Builder did not allege it incurred any attorney fees to obtain *benefits due under the policy* (*Brandt v. Superior Court, supra*, 37 Cal.3d at p.

---

[21] The *Houston* case is now on appeal before the Ninth Circuit.

[22] Builder confirmed multiple times in its opposition to Steadfast's demurrer that its bad faith claim arose from Steadfast's filing and prosecution of the cross-complaint, which forced Builder to incur attorney fees to retain the benefits Steadfast had paid to it. For instance, Builder argued the cross-complaint sought "damages based on Steadfast's attempts to unreasonably deny [Builder] policy benefits *through its wrongful and invalid clawback claims.*" (Italics added.) Builder also argued it sought "attorneys' fees incurred to defend and defeat Steadfast's clawback claims in order to retain [Builder's] policy benefits."

819; see CACI No. 2350), that it incurred damages due to unreasonable actions by Steadfast in investigating or paying the underlying claim before it initiated the cross-complaint against Builder, or that there has been post-litigation bad faith conduct by Steadfast that has damaged Builder. Therefore, the cross-complaint failed to state a viable cause of action.[23]

## II.

### STEADFAST'S APPEAL OF THE JUDGMENT AGAINST STEADFAST ON ITS CROSS-COMPLAINT

The issue on Steadfast's cross-appeal is a purely legal one: Whether Builder could use first-year warranty repair costs, which are specifically excluded from coverage under the policies, to satisfy its SIR obligations. The trial court determined it could. Steadfast contends this was error as to the two renewal policies[24] because the policies expressly provided there was no insurance coverage for those costs, and the court's order contravened general principles of contract interpretation and failed to give effect to every provision in the policies.

---

[23] As Builder acknowledges, its inability to assert a bad faith claim against Steadfast arising from the filing of Steadfast's cross-complaint does not necessarily leave Builder without a remedy. (See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212, 215 [claim for malicious prosecution exception to litigation privilege].) We offer no opinion on the merits of such an action or whether Builder's allegations would be sufficient to state such a cause of action.

[24] Steadfast agreed at trial that Builder was able to apply first-year warranty repair costs under the initial policy based on the following language in that policy's SIR endorsement: "SIR applies to damages, defense costs and warranty and customer service costs of Builder and/or trade contractor." That language was not included in any endorsement to either of the two renewal policies.

We disagree. Both the initial and renewal policies defined "'Self Insured Retention'" to include "[a]ll amounts which [Builder] become[s] legally obligated to pay as damages or 'repair costs' as defined in this policy. . . ." Although worded slightly differently, the term "'repair costs'" is defined in the policies as the costs to repair or replace a construction defect, including all costs covered by the Home Builder's Limited Warranty. The parties do not dispute that first-year warranty repair costs were costs covered by the Home Builder's Limited Warranty.

Steadfast contends that the phrase "repair costs," as used in the SIR provision, meant only *covered* repair costs, and that by using excluded repair costs to satisfy its SIRs, Builder gained more insurance coverage than the parties bargained for, a result that would contravene well-established principles of contract interpretation. The problem with this argument is that it ignores the language of the policies: The policies did not state that only *covered* repair costs could be used to satisfy the SIR amounts. And to the extent there is any ambiguity as to whether only covered repair costs could be used to erode the SIRs, it must be construed in favor of Builder. (*Delgado v. Heritage Life Ins. Co.*, *supra*, 157 Cal.App.3d at p. 271.)

In further support of its argument that amounts excluded from coverage cannot be used to erode the SIR amounts under the policies, Steadfast points to the definition of SIRs found in case law, including this court's decision in *Forecast Homes, supra,* 181 Cal.App.4th 1466. In *Forecast Homes*, we explained "'[l]iability insurance policies often contain a "deductible" or a "self-insured retention" (SIR) requiring the insured to bear a portion of *a loss otherwise covered by the policy*.'" (*Id*. at pp. 1473–1474, italics added.) We went on to explain that SIR "'refers to a specific sum or percentage of loss that is the insured's initial responsibility and must be

29

satisfied *before* there is any coverage under the policy.'" (*Id*. at p. 1474.) The problem with Steadfast's argument is that the language it cited from our opinion in *Forecast Homes* was simply a generalized description of how SIRs typically function. It certainly does not stand for the proposition that, irrespective of the express language of a policy, only amounts otherwise covered under a policy may be used to erode SIRs. The rights and obligations of the parties with respect to SIRs in a particular policy are governed by the policy language itself, which is a contract between the parties. Indeed, we held in *Forecast Homes* that "an SIR, like any insurance provision, must be enforced according to its plain terms." (*Id*. at p. 1475.) Steadfast could have specified in the definition of SIRs included in the policies it issued to Builder that only *covered* repair costs could be applied to satisfy the SIRs. It included no such limitation in the policies.

Finally, Steadfast points to the endorsement in the initial policy to support its position that the only reason Builder could use first-year warranty repair costs to erode the SIR in the initial policy term was because the endorsement modified the policy. The SIR endorsement provided as follows: "SIR applies to damages, defense costs and warranty and customer service costs of Builder and/or trade contractor." Steadfast argues the endorsement, not the form policy language, allowed Builder to apply "customer service costs," which Steadfast equates with first-year warranty costs, to its SIR, and that interpreting the second and third policies as permitting Builder to apply first-year warranty repair costs to its SIRs renders language in the initial policy's SIR endorsement superfluous. We disagree. First, as explained above, one need look no further than the policies' provisions defining SIRs and "repair costs" to conclude Builder was not precluded from applying uncovered first-year warranty repair costs to satisfy

the SIR amounts. The endorsement does not change the policies in that regard, and any alleged ambiguity regarding whether the parties intended to allow Builder to use excluded first-year warranty costs to satisfy its SIR amounts during the term of the initial policy, but not in the second and third policy periods, must be resolved against Steadfast.

As a result of our conclusion that the trial court properly interpreted the policies to permit Builder to apply first-year warranty repair costs to satisfy its SIR amounts, we need not remand the case to the trial court for further proceedings on Builder's affirmative defenses to Steadfast's cross-complaint.[25]

DISPOSITION

The judgment is affirmed. In the interests of justice, each party is to bear their own costs on appeal.

GOODING, J.

WE CONCUR:

O'LEARY, P. J.

DELANEY, J.

---

[25] In issuing its statement of decision following the bifurcated court trial, the trial court concluded it did not need to address any of the issues raised regarding Builder's affirmative defenses in light of its conclusion that Steadfast was not entitled to any relief pursuant to any of its claims in its cross-complaint.